## Gorman v. McAuliffe, guardian.

The plaintiff claiming as heir at law of her deceased husband, and her right, if any, depending upon the surrender of a deed which her husband had executed to the intestate of the defendants to defraud the husband's creditors, and this surrender having occurred some years before the death of the husband, her ignorance of the fact affords no legal excuse for her delay to bring suit. She being in privity with her husband and he having had knowledge of the fact, his knowledge is imputable to her.

November 27, 1893.                    *Judgment affirmed.*

Equitable petition. Before Judge Roney. Richmond superior court. April term, 1893.

The widow and sole heir of Mark Gorman sued to recover of the heirs of James Gorman certain land situated in Glascock county. The court granted a nonsuit, and afterwards overruled a motion to reinstate the case, and the plaintiff excepted. The following appears from the evidence: In September, 1859, a suit for damages was pending against Mark Gorman, and his brother James proposed that Mark convey the land in question to him so that it could not be sold in the event of a recovery by the plaintiff in that suit. Mark thereupon made to James a deed to the land, reciting a consideration of $1,000; but no money was paid. On February 20th, 1861, judgment was rendered against Mark Gorman in the suit mentioned, for $124.50; and the execution docket shows an entry that on March 1st, 1866, Mark paid $109. Walden, who was one of the subscribing witnesses to the deed, testified that after Mark paid the judgment off, he asked James a good many times to give him back his papers, and James refused, but said he would give them to Maria, Mark's then wife. John Gorman, a brother of Mark and James, testified that Mark owed James $40 on a debt contracted before the war, and in 1867 or 1868 Mark wanted his deed back, and James refused to give it back unless Mark

paid the $40 and 10 per cent. interest on it. The next year Mark made the payment so exacted, amounting to $90, and the deed he had made was returned to him. Mark married the plaintiff in February, 1871, and died intestate in the next October. On February 20th, 1872, James caused a copy of the deed from Mark to himself to be established before the ordinary on the affidavit of Walden, saying that Mark and Maria were both dead and he (James) might as well have the place as anybody else. This copy was recorded a few days later in Glascock county. It describes the land as 180 acres in said county, "adjoining lands of Isaac Downs, Elizabeth Kitchens and others, one hundred acres of the land being the same conveyed by J. P. Usry to Mark Gorman, April 4th, 1857, and eighty being the same conveyed by Calvin Logue to Mark Gorman, July 25th, 1855." Certificates of the clerks of Glascock and Warren counties are, that there is no record, in the office of either, of any conveyance from either Calvin Logue or J. P. Usry or any other grantor to Mark Gorman, of land in Glascock, formerly Warren county. The tax digests showed returns of the 180 acres, in 1858 and 1859 by Mark, and in 1861 by James Gorman (the digest of 1860 having been lost); for 1866–1871 by Mark, and for 1872 by James. By three witnesses it was shown that Mark settled on the land in 1858, cleared and fenced it and built houses on it, and lived there until 1867, when he moved to Burke, renting the place to various tenants during the following years inclusive of 1871, and witnesses paid him rents therefor. Mrs. Clarkson testified that, not quite five years after Mark's death, Mike Gorman (another brother) told her he thought of suing James for a part of this land, that James was holding it and he (Mike) wanted to get a share, and that the reason he did not sue him was that Mark's widow knew nothing of it and he did not want her to know it. Wit-

ness told James what Mike had said, and James said the property was not his, and his brothers could take it and divide it. He said it was his brother's land. Witness did not inform Mark's widow of this. John Gorman testified that James and Mike took possession of all Mark left at his death, corn, cotton, potatoes, mules, furniture, etc.; and that he never told plaintiff, until about four or five years ago, of the circumstances above related, touching the return of the deed, etc. The plaintiff testified: "My husband told me in his lifetime that he had some land in Glascock county, and intended the next year to improve it; that is what he said; he did not say much about it. After my husband's death his brother James took possession of all my husband left. I asked Mr. James Gorman about my husband's personal property after his death, and he said it was all used up in his funeral expenses. I asked him after that about my husband's land in Glascock county, and he said he left no land there. I never knew about my husband having bought the land there from Mr. James Gorman, until Mr. John Gorman told me about six years ago. I got information my husband had land there; the information was that Mrs. James Gorman was going to get married again and the land was to be sold. I went to Mrs. James Gorman and told her what brought me; went from her to Mr. John Gorman, and he told me what he has said here; he said the land was my husband's and he had paid for it; this was the first knowledge I had of it."

The plaintiff brought suit against the defendants for the same cause of action, to the August term, 1888, of Glascock superior court, and dismissed that suit at the February term, 1890. The present action was commenced on September 30th, 1890.

F. W. CAPERS and SALEM DUTCHER, for plaintiff.
BRYAN CUMMING, for defendant.