SNAUFFER et al. v. STIMSON, Secretary of War, et al.

No. 9120.

United States Court of Appeals
District of Columbia.

Argued April 2, 1946.

Decided April 29, 1946.

Mr. Emil H. Wasserberger, of New York City, pro hac vice, by special leave of Court, with whom Mr. Irwin Geiger, of Washington, D. C., was on the brief, for appellants.

Mr. Daniel B. Maher, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Sidney S. Sachs, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellees. Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellees.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

GRONER, C. J.

Appellants are the sons of Francis Snauffer, deceased, who at one time was a Federal soldier in the Civil War. They ask for an order commanding the Secretary of

War to remove the charge of desertion from the military record of their father and requiring the Administrator of Veterans' Affairs to pay to them bounty, allowances and pensions accruing to their father until his death in 1925, and to his widow until her death in 1926. The Secretary and the Administrator moved to dismiss for lack of jurisdiction in the court to grant the relief prayed and for laches. The motion was granted and the case is here on appeal.

The facts on which appellants base their claim show that Snauffer, the soldier, enlisted in Company K of the 108th Ohio Infantry on January 6, 1864. The company muster roll for the period from his enlistment to April 30, 1864, shows that Snauffer "Deserted January 20, 1864" (two weeks after enlistment). A later company roll contains the notation that he "Returned from desertion May 23, 1865" (a little more than a month after the surrender of General Lee's and General Johnston's Armies, the fall of Richmond and the collapse of the Confederacy). Other official records referred to in the complaint show that Snauffer on April 19, 1865, was confined in Kelton Barracks, Cincinnati, on the charge of being "a straggler" and was thence sent to New York City, and on April 22nd was in the Convalescent Barracks at Fort Wood, New York Harbor. From that place, it appears, he was ordered returned to duty, and on April 24, 1865, was sent to General Sherman's Army, then stationed around Charlotte, North Carolina. The discrepancy between the notation "Returned from desertion May 23, 1865" and the last mentioned order returning him to duty April 24, 1865, is unexplained and is made much of by appellants as showing, on the basis of the latter item, more than ninety days' total service in the army. Whether Snauffer was actually present with his regiment when it mustered out of the service in Louisville, Kentucky, the following July, is also not clear. A copy of a letter from the Veterans' Bureau, filed by appellants as a part of the record, contains the positive statement that he was then, that is to say at the time of discharge, absent without leave. And the statement is in some degree corroborated by the fact that his discharge paper made out for that occasion was not then delivered to him, but instead was filed in the archives of the Adjutant General's Office until it was discovered and withdrawn in 1916. An examination of the copy of the discharge in the record shows that it contains no statement that he had served honorably in the service, and equally nothing to show that he had not. We are not informed by counsel for either side what was the regulation form of "honorable" discharge then in effect, and such examination as we have made independently leaves us in doubt whether the particular form used in Snauffer's case was in fact an "honorable discharge" or merely a discharge intended to effect his severance from the army payroll. But Snauffer, some fifty-odd years after the date of the discharge paper, asserting it was an honorable discharge, applied for the benefits accruing by law to an honorably discharged Civil War veteran. The rejection of this claim by the Administrator was not grounded on the charge of desertion, but was based on the record history of his service, which, it was claimed by the Administrator, showed that he had served less than ninety days. There the matter rested until the instant suit was begun, more than a quarter of a century later, and more than three-quarters of a century after Snauffer's severance from the army.

Whatever may be the fact regarding Snauffer's term of actual service, insofar as the pension claim is concerned it is perfectly clear the District Court was without jurisdiction to issue an order directing its payment. We have often held that, Congress having denied judicial review of the decisions of the Administrator of Veterans' Affairs concerning claims for pensions,[1] the courts have no power to grant relief.[2]

This then brings us to the remain-

[1] Act of March 20, 1933, ch. 3, tit. 1, § 5, 48 Stat. 9, 38 U.S.C.A. § 705; Act of October 17, 1940, ch. 893, § 11, 54 Stat. 1197, 38 U.S.C.A. § 11a—2.

[2] Davis v. Woodring, 72 App.D.C. 83, 111 F.2d 523; Van Horne v. Hines, 74 App.D.C. 214, 122 F.2d 207, certiorari denied 314 U.S. 689, 62 S.Ct. 360, 86 L.Ed. 552, rehearing denied 314 U.S. 717, 62 S.Ct. 478, 86 L.Ed. 570.

ing question,—whether Snauffer, having received in July, 1865, a discharge from the army, is now entitled as a matter of right to invoke the provisions of the statute[3] which authorize the Secretary of War, upon application, to remove a record charge of desertion upon satisfactory proof that within a reasonable time after the desertion the soldier voluntarily returned to his command and served faithfully to the end of his term of service, or until discharge. If in the present state of the record we felt that we could answer this question on the merits, we should be disposed to say that the Secretary's refusal to act favorably was in all respects proper and certainly well within the discretion reserved to him by the terms of the Act. Taking the most liberal view of appellants' claims, the main questions—Snauffer's belated return to faithful service and his reinstatement by the army to his original status as a soldier—are still left to doubt and conjecture. Under the circumstances, interference in the rulings and decisions of the Department by the courts would be wholly improper.

■ We prefer, however, to rest our decision, at least in part, upon the doctrine of laches. There can be neither doubt nor conjecture that if anyone knew the precise facts in relation to his service, it was Snauffer. And yet the record shows that for more than fifty years he never once made the slightest effort to have the notation of "desertion" on his company's rolls cleared up. Nor is anything shown to the effect that even after he had secured from the files of the War Department the original certificate of his discharge, and was denied his claim to a pension because of his failure to have served ninety days in the army, he contested the decision in the courts or in Congress by showing, as is now claimed, that from the date he was ordered back to General Sherman's Army he was accepted and actually served to the day his regiment was mustered out. It is clear that such a period of delay would and ought to bar any claim by Snauffer, and it should likewise bar the claim of his descendents, for his knowledge and delay are equally chargeable against them.[4] The Federal courts have universally applied the rule that equity will not aid stale demands,[5] nor will mandamus issue to compel performance on such a claim.[6]

■ Appellants themselves, with their father's discharge paper in their possession, were equally inactive for more than seventeen years. In their argument in this court they seek to avoid the consequences of this by the contention that there is nothing to show that the delay was prejudicial to the Government. But we think this does not follow. On the contrary, a more reasonable conclusion, and in the circumstances a more binding one, is that the delay must have affected the Government's ability to defend the claim. It is obvious that even the Government may not be assumed, after seventy-five years, to have ready access to the individual record in all respects of every soldier enlisted in the Civil War. Under such circumstances, enough is shown to justify the application of laches to the claim,[7] and to require our affirmance of the judgment below.

Affirmed.

---

[3] Act of March 2, 1889, ch. 390, § 2, 25 Stat. 869, as amended March 2, 1891, ch. 498, 26 Stat. 824, 10 U.S.C.A. § 1435.

[4] Gillons v. Shell Co. of California, 9 Cir., 86 F.2d 600, certiorari denied 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532; Gorman v. McAuliffe, 93 Ga. 295, 20 S.E. 330.

[5] Hammond v. Hopkins, 143 U.S. 224, 12 S.Ct. 418, 36 L.Ed. 134; Gildersleeve v. New Mexico Mining Co., 161 U.S. 573, 16 S.Ct. 663, 40 L.Ed. 812; 1 Pomeroy, Equity Jurisprudence, § 419.

[6] United States ex rel. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650; United States ex rel. Greylock Mills v. Blair, 54 App.D.C. 27, 293 F. 846, certiorari denied 264 U.S. 587, 44 S.Ct. 335, 68 L.Ed. 863.

[7] See: The Kermit, 9 Cir., 76 F.2d 363; Liverpool & London & Globe Ins. Co. v. Crosby, 6 Cir., 83 F.2d 647.