**UNITED STATES of America,**
**Plaintiff,**

v.

**Kenneth E. OWENS, Defendant.**

**Civ. A. 3081.**

United States District Court
E. D. Arkansas, W. D.

Jan. 4, 1957.

Osro Cobb, U. S. Atty., Walter G. Riddick, Jr., Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

Robert J. White, Russellville, Ark., for defendant.

LEMLEY, District Judge.

This cause having been tried to the Court, and the Court being well and fully advised, doth hereby make the following Findings of Fact, Conclusions of Law, and Comment thereon, to-wit:

### Findings of Fact

1. This is an action brought by the plaintiff, United States of America, against the defendant, Kenneth E. Owens, a resident of Pottsville, Pope County, Arkansas, to recover from him the sum of $807, representing sums paid to him by the Government as unemployment readjustment allowances under Title V of the Servicemen's Readjustment Act of 1944, 38 U.S.C.A. § 696d, and to which the Government claims he was not entitled. The defendant has filed an answer herein in which he denies that he is indebted to the plaintiff in any sum whatever.

2. The evidence shows that the defendant separated from the United States Navy sometime in 1946, and that he drew unemployment readjustment allowances under the Act above cited for the months of November, 1947 through July, 1948; the amounts of monthly allowances varied from $100 to as low as $31, and, as indicated, totalled $807. Those allowances were granted to the defendant as a self-employed filling station operator in the town of Pottsville.

3. The Certificate of Indebtedness, executed by the Comptroller General of the United States, dated May 25, 1955, almost seven years after the last payment to the defendant had been made, and which constituted the Government's demand on the defendant for repayment, recites that the reason for the indebtedness was that the defendant had failed to correctly report his earnings for the month of November, 1947, and was thereby disqualified from receiving any further benefits, and that the payments

were declared forfeited under Section 1300 of the aforesaid Act.[1]

3. As stated, the defendant was paid allowances for the months of November, 1947 through July 1948, after which no further payments were made to him. The basis for each payment was a certificate executed by the defendant (VA Form 4–1387) and also signed by an official of the Arkansas Employment Security Division, designated as a "Deputy 1," which certificate purported to accurately reflect the defendant's net earnings for the month covered by such certificate.[2] The certificate covering the month of November, 1947 showed no net earnings at all, and the defendant was paid the sum of $100. Two other certificates were introduced in evidence, one covering the month of December, 1947 showing net earnings of $3.29, and the other covering the month of January, 1948, showing no net earnings.

4. On December 7, 1948 an administrative hearing was held at Russellville, Arkansas by an agent of the Employment Security Division, designated as a "Deputy 2," to determine whether or not the defendant had received allowances to which he knew he was not entitled. The defendant appeared and testified at that hearing and was represented by one Notestine, the service officer of the American Legion Post at Russellville, who was not a lawyer. After that hearing it was determined on December 27, 1948 that the defendant had knowingly received allowances to which he was not entitled; that determination was approved by a Readjustment Allowance Agent of the Veterans Administration on April 6, 1949; an appeal was taken from that determination to the Administrator of Veterans' Affairs, and the determination was finally approved on June 2, 1949, over six years before this suit was filed. While a transcript of the hearing at Russellville was introduced in evidence at the trial of this case, the findings and conclusions of the Veterans' Administration, if any, were not brought into the record here.[3]

5. In support of its action the Government advances two theories: First, that during the period in question the defendant, in fact, knowingly received benefits to which he was not entitled; and, second, that by virtue of the provisions of 38 U.S.C.A. § 705, the administrative determination that he had done so, which determination has been mentioned, is in all events final and binding upon this Court, and that the defendant cannot now be heard to say that he is not indebted to the United States.[4]

1. 38 U.S.C.A. § 696k. That statute provides that any claimant "who knowingly accepts an allowance to which he is not entitled shall be ineligible to receive any further allowance under this subchapter."

2. Under the provisions of 38 U.S.C.A. § 696d, the defendant as a self-employed person was entitled to receive from the Government as an unemployment adjustment allowance the difference between his actual net earnings from his business, trade, vocation or profession and the sum of $100 for each month in which such actual net earnings did not exceed $100.

3. Our information as to the determination of non-eligibility by the Veterans Administration at different levels is derived solely from requests for admissions propounded to the defendant and acceded to by him.

4. 38 U.S.C.A. § 705 provides that all decisions "rendered by the Administrator of Veterans' Affairs * * * * shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision." Section 1500 of the Servicemen's Readjustment Act of 1944, 38 U.S.C.A. § 697(a) provides that the administrative provisions of 38 U.S.C.A. § 705, just quoted, shall be applicable thereto. In its brief in support of its motion for summary judgment, on which motion we reserved our ruling, the plaintiff also referred to 38 U.S.C.A. § 11a–2, which provides that decisions of the Veterans' Administration on any question of law or fact concerning "a claim for benefits or payments under any Act administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decisions."

6. On its first theory the Government had the burden of proof, which it undertook to discharge at the trial by attempting to show that the defendant had knowingly misstated his net earnings for the months of November and December, 1947, and January, 1948, by knowingly understating the sales from his business during each of those months. More specifically, the plaintiff contended that the defendant was required to show in his monthly certificates his total amount of gross sales, whether cash or credit, and that he knew this, or was charged with knowledge of such requirement, and it sought to show that he knowingly reported his cash sales only while ignoring his credit sales entirely.

The defendant does not deny that he failed to report to the Government his credit sales during the months in which they were made, or until he collected on his accounts. He testified, however, that he believed that he was not required to report his credit sales until he had collected on his accounts, and that his cash sales and actual collections or credit sales were always correctly reported. He also testified that Mr. Gardner, the "Deputy 1," who signed the certificates in evidence, assisted in the preparation and aided him in computing the amount of his sales. There was no evidence to the contrary.

While the term "gross sales" ordinarily includes both cash and credit transactions, an examination of the certificates that have been mentioned indicates that the defendant may well have been correct in his belief that he was required to report cash sales only. As pointed out, those certificates were on printed forms prepared by the Veterans' Administration; on the left hand side of each certificate is a column labelled "Income," and another column labelled "Cash Paid for Expenses." Under the heading "Income" is found a sub-heading "Cash Received from Self Employment," and immediately under that sub-heading appears the phrase "Gross Sales," followed by a blank space for the insertion of an amount. When it is considered that the term "Gross Sales" appears immediately under the heading "Cash Received from Self Employment," and when the latter phrase is read in connection with its opposite number, "Cash Paid for Expenses," it would seem that self-employed veterans were supposed to report their income and expenditures on a cash basis, and, if so, they would only report their cash sales during a given month, plus collections on credit sales made in previous months, as the defendant testified that he did.[5]

But, however that may be, the Government was required to show from an evidentiary standpoint, not only that the certificates were false in fact, but that they were knowingly false; and certainly it cannot be said, in view of the form and language of the certificates, that a veteran, situated as was the defendant, might not honestly believe that he should report cash receipts only; and there is no evidence that the defendant did not so believe. Hence, the plaintiff has failed to show that the de-

---

5. After the trial had been concluded the language and form of the certificates in question, which certificates had not been before the Court until they were actually introduced in evidence, were called to the attention of counsel for the plaintiff, by means of a letter in which the Court expressed a doubt that the defendant was required to report his credit sales as they were made. Counsel replied by letter, dated November 19, 1956, in which he stated that he had found a regulation (38 CFR, Section 36.500(3) (b) ) which indicated that the Court's doubt may have been well founded. That regulation pro-

vided that the term "net earnings" means "the net amount *realized in earnings* by the veteran in any given month which may serve the purpose of his *immediate livelihood.* It covers earnings *received* by him in connection with his self-employment, reduced by the amount of expenses incurred during any month which are directly related to his self-employment." (Emphasis added.) Counsel also stated that he had not been able to learn whether that precise regulation was in effect in November, 1947 or not, but that he had "no reason to believe that it was not."

fendant knowingly received benefits to which he was not entitled merely by showing that he did not include credit sales except to the extent that he had made cash collections on them.

After the trial of the case, and in his letter of November 19, which has been mentioned, counsel for the plaintiff argued that the defendant did not in fact sell as much gasoline on credit as he claims that he did and that the certificates introduced in evidence did not correctly reflect even his cash sales, that he failed to show income from the "service car" that he operated in connection with his filling station, and that he failed to keep proper records. The Government introduced no evidence to support those post-trial contentions, however, and the facts asserted by the plaintiff in connection therewith do not appear from the faces of the certificates filed by the defendant. While the defendant was questioned to some extent as to those matters in the course of the administrative hearing, and while his answers may not have been entirely satisfactory to the administrative officials considering his case, we do not believe that such is alone sufficient to establish the plaintiff's claims. The defendant never admitted during the course of the administrative hearing or at the trial that he had knowingly received benefits not due him, but has always insisted that throughout the entire period he had correctly reported his income and expenses to the best of his ability and in accordance with his obligations as he understood them. That the defendant may have followed an improvident policy in extending credit and sustained losses thereby, as he says he did, does not mean that he was dishonest. It should be remembered in that conection that had he simply wanted to get money out of the Government, it would probably have been less trouble for him to have simply taken care to remain absolutely unemployed while drawing $20 a week for a period of 52 weeks.

### Conclusions of Law

1. This Court has jurisdiction of this cause and of the parties hereto.

2. Since the Government has failed, from an evidentiary standpoint, to prove that the defendant knowingly received any benefits to which he was not entitled, it cannot prevail on that theory.

3. As will be hereinafter discussed, 38 U.S.C.A. § 705, does not apply retroactively so as to make the determination of the Veterans' Administration that the defendant did knowingly receive benefits to which he was not entitled conclusive upon him in this action, and does not of itself establish the plaintiff's claim.

4. The complaint herein must be dismissed with prejudice.

### Comment

Our foregoing findings and conclusion to the effect that the plaintiff has failed to make a case under its first theory of recovery which has been mentioned require no elaboration or discussion. We do, however, desire to comment to some extent upon the plaintiff's second theory based upon its contention that the defendant and this Court are bound by the administrative finding of the Veterans' Administration that the defendant knowingly received benefits to which he was not entitled.

Under that theory the plaintiff would have us construe 38 U.S.C.A. § 705 to mean that findings and conclusions of the Veterans' Administration are to be given retroactive finality and are beyond the scope of judicial review. If that theory is correct, then when the Administration determines that payments have been improperly made, and brings a suit based upon such a determination, the function of the Court is limited to the entry of judgment for the amount sued for, regardless of lapse of time or the amount involved. Obviously, such a construction would make the courts but rubber stamps for administrative action in cases of this kind, serving no function but to render judgments preliminary to the issuance of execution thereon.

While this theory finds support in United States v. Gudewicz, D.C.N.Y., 45 F.Supp. 787, and to some extent in

United States v. Mrock, 6 Cir., 88 F.2d 888, we are not bound by those decisions, and with all due respect to the courts that rendered them, we are unwilling to so construe the statute. In our opinion that enactment accords prospective finality only to findings and conclusions of the Veterans' Administration and applies only where judicial review thereof is sought against the Government, and not where, as here, the Government is seeking affirmative judgment for the recovery of money. To hold otherwise might raise grave constitutional doubts as to the statute's validity; as was said in Hormel v. United States, D.C.N.Y., 123 F.Supp. 806, 810: " * * * the Government's construction as applied to this case raises the serious question whether the Fifth Amendment would not invalidate a law which would permit the Government to recover a judgment against a citizen without giving him an opportunity to challenge the bare assertion of an administrative officer that money was due and owing. * * * Where there are two reasonably possible constructions of a federal statute, it is the duty of a federal judge to choose the one which does not raise constitutional doubts."

■ Conceding that the payments here involved are gratuities, and that Congress has the power, which it has exercised, to condition the right of the defendant to receive such payments initially or to continue to receive them in the future upon an administrative determination of his entitlement thereto, and to put those findings beyond the reach of judicial review in an action brought by the defendant against the Government,[6] it does not follow that Congress intended the converse of that proposition so as to accord retroactive finality to a finding that payments already made, and probably long since spent, were improperly received, and that the recipient, if living, or his estate, if he be dead, is liable for restitution,

and to make such a finding an all sufficient basis for recovery in a suit of this nature.

It must be remembered that the relationship between the defendant (and others like him) and the plaintiff with respect to unemployment adjustment benefits was not an ordinary business relationship; rather, it was, in a sense, a paternal one between the Government, on the one hand, and returning soldiers and sailors, on the other hand, that was entered into by the former in recognition of its obligations to those who had borne the burden of war, and with the intent to extend to them limited financial aid during their period of economic readjustment. The manifestly harsh results that would flow from the interpretation of Section 705 that is urged by the plaintiff would seem to be contrary to the beneficent intent of Congress in adopting the unemployment adjustment program, and, indeed, might make the receipt of benefits under such program a delusion and a snare, particularly when it is realized that the defenses of limitations, laches, and estoppel, usually available to a defendant in controversies between man and man, cannot, ordinarily, be successfully urged against the Government. As a matter of fact, under the Government's theory of the meaning and applicability of Section 705, if an action is brought against a veteran based upon an administrative finding that payments to him have been improperly made, he is simply, from a practical standpoint, without any defense, and judgment must be rendered against him, regardless of the ruinous consequences to him that may flow therefrom, and regardless of his honesty or good faith, or any other extenuating circumstances. Not only would the results of such a construction be harsh at best, but, in addition, such a reading of the statute would throw wide the door for arbitrary action against veterans who had come under administrative displeasure. Such arbitrary action

---

6. United States ex rel. Farmer v. Thompson, 4 Cir., 203 F.2d 947; Hahn v. Gray, 92 U.S.App.D.C. 188, 203 F.2d 625; Slocumb v. Gray, 86 U.S.App.D.C. 5, 179 F.2d 31; and Snauffer v. Stimson, 81 U.S.App.D.C. 110, 155 F.2d 861.

might well be found not only in connection with the making of initial findings and conclusions, but also in connection with administrative action in choosing which of the affected veterans should be sued and which should be let go free.

Moreover, the idea that the Government by means of an informal administrative hearing such as was conducted in this case can create for itself an unassailable cause of action for the recovery of money, and enforce that claim in the courts, while prohibiting the defendant from being heard therein on the merits, is clearly repugnant to fundamental notions of fair play and to our concept of this nation as one of free men having rights against their government which the courts can and will protect; and it is likewise repugnant to those great principles of natural law and justice that undergird our system of jurisprudence, not the least of which principles is that no man should be a judge of his own cause.

For the reasons stated we would be unwilling to attribute to the Congress the intent to bring about such a result as that for which the Government contends unless such intent be shown by the clearest possible language. We find no such clear expression of intent in the statute, and, on the other hand, the prohibition of judicial review "by mandamus or otherwise," seems to us to imply that Congress intended for administrative findings and determinations to have finality in their prospective application only, and for the prohibition against judicial review of such findings to apply only where affirmative relief is sought against the Government, which is not the case here. In other words, as we read it, the statute is a shield and not a sword.

While the plaintiff criticizes the holding in Hormel v. United States, supra, it concedes that that case is squarely contrary to the position which it here assumes; and it further concedes that the recent case of United States v. Gibson, 9 Cir., 207 F.2d 161, suggests that decisions of the Veterans' Administration do not enjoy finality when made the basis of an affirmative claim for relief by the Government. We likewise are of that opinion.

We, of course, do not question that if the Government makes a proper evidentiary showing, a veteran who has received payments improperly is liable to make restitution thereof; but we do not think that the Government can use an administrative determination of the Veterans' Administration as a substitute for evidence, thus raising itself, so to speak, by its own boot straps.

Let a judgment be entered dismissing the complaint herein with prejudice.