**UNITED STATES of America,**
**Plaintiff,**

v.

**WILEY'S COVE RANCH, a partnership,**
**Defendant.**

**No. 456.**

United States District Court
W. D. Arkansas,
Harrison Division.

March 3, 1960.

Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for plaintiff.

Walker & Villines, Harrison, Ark., N. J. Henley, Marshall, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is a civil action by the United States to recover payments made by the Department of Agriculture to the defendant partnership for livestock feed under the 1954 Emergency Feed Program. The defendant has filed, under Rule 12(c), Federal Rules of Civil Procedure, 28 U.S.C.A., a motion for judgment on the pleadings to which is attached the affidavit of two Committeemen. The motion is erroneously designated as a "Motion to Dismiss," but will be considered by the court as a motion for summary judgment pursuant to Rule 56.

The facts as shown by the pleadings and affidavit are not in dispute, and are as follows:

The defendant, Wiley's Cove Ranch, is a partnership composed of Mrs. Drucilla Mays, Ed Behnken and Virginia Behnken, his wife, and Mrs. Edna Lee Seeger. The principal place of business and headquarters of the partnership is at Leslie, Searcy County, within the Western District of Arkansas. In 1954 the manager of the ranch, W. J. Seeger, now deceased, applied for federal assistance under the provisions of the 1954 Emergency Feed Program. The first application was dated September 9, 1954, and the second December 13, 1954. Both applications were approved by the local County Committee appointed pursuant to the Bankhead-Jones Farm Tenant Act, 7 U.S.C.A. § 1000 et seq.

Following the original approval, the County Committee was requested to re-examine the question of the defendant partnership's eligibility under the terms of the program. The defendant's status was again investigated by the County Committee and was subsequently recertified as to eligibility. The Department of Agriculture then issued 13 purchase orders for feed to the defendant partnership, thereby allowing it to receive 341,000 pounds of surplus grain at a total cost to the Government of $3,410.

In the complaint the Government merely alleges that the defendant partnership was not eligible for assistance under the program. In answer to an interrogatory, the Government spelled this allegation out with more particularity in saying:

"4. The financial condition and net worth of the partnership was not such that it required assistance under this program to maintain its foundation herd of livestock and to continue its livestock operations."

It should be noted that the Government does not allege fraud on the part of the defendant partnership or on the part of the County Committee.

In the affidavit executed by the two members of the Searcy County Committee still residing within the State, inter alia, it is stated:

"That during the year of 1954 the said William J. Seeger was manager of the said Wiley's Cove Ranch and authorized to act for and in behalf of the Mays family in the operation of the said Wiley's Cove Ranch; that the said William J. Seeger is now deceased. Affiants further state that the said William J. Seeger made proper application for feed under said Emergency Feed Program and that said County Committee made proper and due investigation of said application and determined that the said Wiley's Cove Ranch was fully eligible to receive feed under said program.

"Affiants personally knew that the said Wiley's Cove Ranch, like all other farmers in Searcy County during the year aforesaid was unable to raise any feed by reason of the extreme drouth; that said Ranch was devoted exclusively to raising pure-bred Hereford cattle for breeding purposes and had, at that time, sev-

eral hundred head of said cattle which constituted a foundation herd for the purposes aforesaid; that it is and was the honest opinion of said Committee that the said Wiley's Cove Ranch received more than one-half of their net income for said year from raising and selling breeding stock from their herd of purebred cattle.

"That following the original certification of eligibility of said Wiley's Cove Ranch said County Committee was requested to re-examine the question of the eligibility of said Wiley's Cove Ranch to receive said emergency relief, and this re-examination was requested and done by reason of the fact that some question had arisen as to the eligibility of the Ranch to receive the aid aforesaid.

"That said Committee accordingly made a thorough investigation of the condition existing at the Wiley's Cove Ranch in reference to the eligibility aforesaid, and said Committee again found and determined that the said Wiley's Cove Ranch was fully and completely eligible to receive said help, and said County Committee again re-certified said fact to be true, and that the records of the Farmer's Home Administration will reflect the above facts to be true; that affiants are not related by blood or marriage to any member of the Mays family and that they have no personal interest, one way or another in the matter under discussion herein, and that they and each of them feel that they performed their duties as prescribed by law, \* \*."

Therefore the question before the court is whether the defendant partnership is entitled to a judgment as a matter of law. To determine this, it must be decided whether the findings of the County Committee can now be set aside and the question of eligibility be determined by this court. In order to do this it is necessary to examine the law that created the Emergency Feed Program of 1954, and the regulations under which the program was administered.

The basic statutory authority is found in 12 U.S.C.A. § 1148a–2(d):

"The Secretary is authorized in connection with any major disaster determined by the President to warrant assistance by the Federal Government under sections 1855–1855g of Title 42, to furnish to established farmers, ranchers, or stockmen feed for livestock or seeds for planting for such period or periods of time and under such terms and conditions as the Secretary may determine to be required by the nature and effect of the disaster. The Secretary may utilize the personnel, facilities, property, and funds of any agency of the United States Department of Agriculture, including Commodity Credit Corporation, for carrying out these functions and shall reimburse the agencies so utilized for the value of any commodities furnished which are not paid for by the farmers or ranchmen, and for costs and administrative expenses necessary in performing such functions."

Acting pursuant to this statute, the Secretary of Agriculture delegated to the Farmers Home Administration the duty of administering the program. This regulation is found in 19 Federal Register 4674, and provides:

"Office of the Secretary

"Transfer of Certain Functions With Respect to the Feed and Hay Programs to the Farmers Home Administration

"Pursuant to the authority contained in section 42(d) of the Bankhead-Jones Farm Tenant Act, as amended (7 U.S.C. 1016(d) ), Reorganization Plan No. 2 of 1953 [5 U.S.C.A. following section 133z–15], and the delegation from the Administrator, Civil Defense Administration, as amended (18 F.R. 4609, 19 F.R. 2148), section 1400 of the Secretary's Order of December 24, 1953

(19 F.R. 74), is further amended so as to transfer to the Farmers Home Administration the function and responsibility of providing eligibility rules and certifications for applicants for assistance in obtaining livestock feed, including hay, and to assign to the county committees established under the Bankhead-Jones Farm Tenant Act, as amended, the additional function of certifying applicant's eligibility, and to read as follows:

"Sec. 1400. *Assignment of functions.*

\* \* \* \* \* \*

"o. The establishment of rules and regulations for determining the eligibility of farmers and stockmen for assistance in obtaining livestock feed, including hay, under cooperative agreements with the several States executed pursuant to Public Law 875, 81st Cong., and the allocation of funds dated October 7, 1953, or pursuant to programs administered under the authority of Public Law 38, 81st Cong., as amended by Public Law 115, 83d Cong., or sec. 301 of Public Law 480, 83d Cong., 2d Sess., and the certification of eligible applicants pursuant to such rules and regulations by county committees established under the Bankhead-Jones Farm Tenant Act, as amended.

"Done at Washington, D. C., this 26th day of July, 1954.

"(Seal) Ezra Taft Benson,
"Secretary of Agriculture."

Pursuant to the authority delegated to the Farmers Home Administration, the Administrator of that agency promulgated regulations prescribing the eligibility of an applicant and the procedure to be followed. This regulation is found in 6 C.F.R., Pt. 388; 19 F.R. 5199, August 18, 1954. The regulation provides generally that the program will be administered by the Farmers Home Administration, and that assistance may be made available in designated areas to enable farmers and stockmen to acquire hay or other feed required for them to maintain their foundation herds of livestock during the period of emergency.

The standards of eligibility for the program are set forth in Sec. 388.4 of the regulation and provide:

"Subject to the following conditions, any established farmer or stockman (partnership or corporation) whose principal occupation is farming or ranching and whose financial condition is such that he requires assistance under this program in order to maintain his foundation herd of livestock and continue his livestock operations, is eligible for assistance under the Emergency Feed Program. The fact that the purchase of hay or other feed at regular prices may not be profitable to the applicant is not sufficient to qualify him for assistance. The principal occupation of an applicant may be considered to be either the occupation from which he received at least one half of his net income for the calendar year next preceding the date of his application, or the occupation to which he devoted at least one half of his time during such year: Provided, That partnerships or corporations will be eligible only if at least one half of their net income for such year was derived from farming or ranching."

Section 388.3 places the responsibility for the administration of the program in the Farmers Home Administration personnel and the County Committees:

"(a) County Committees. County Committees of the Farmers Home Administration appointed pursuant to the Bankhead-Jones Farm Tenant Act, as amended, are responsible for passing upon applications for assistance under the Emergency Feed Program and are authorized to execute the certification required with respect to an applicant's eligibility for such assistance.

"(b) Responsibility of other FHA personnel. State Directors of the

Farmers Home Administration are responsible for notifying County Supervisors of the designation of counties and for the general supervision of this Agency's functions in receiving and handling applications for assistance under the Emergency Feed Program in their respective states. County Supervisors are responsible for calling meetings of County Committees to pass upon applications and will act in an advisory capacity to such Committees. They are responsible also for the maintenance of such records and for the submission of such reports as may be required."

Section 388.6(b) and (c) contains the basic rules for Committee action:

"(b) The County Committee will review each application and determine whether the applicant is eligible for assistance and, if so, the extent of the assistance which may be provided. In making this determination, the Committee will base its decision primarily upon the information supplied by the applicant, but will take into consideration other information, including knowledge of the Committeemen concerning the applicant's operations and finances, local conditions, and probable duration of the emergency feeding period, the general effect of the emergency conditions on the applicant's ability to meet his future operating expenses, and the probable effect of the emergency on the applicant's income. Each Committee will be expected to apply the foregoing policies in a manner which will result in the impartial certification of applications, and will be expected to take reasonable precautions to see that hay or other feed is not furnished under this program to farmers and stockmen who are otherwise able to maintain their foundation herds without such assistance. Whenever there is doubt as to an applicant's eligibility, the Committee should request additional informa-tion from the applicant as may be necessary to the proper discharge of its duties.

"(c) Each application must be acted upon by at least two members of the Committee. The action taken with respect to an application will be indicated on Form FHA–937. If the application is approved, the amount of hay or other specific types of feed for which the applicant is certified will be indicated. If the application is rejected a brief statement of the reasons for the action will be indicated. The original and both copies of Form FHA–937 will be signed by at least two members of the Committee."

It is, therefore, apparent that in this case the court is called upon to review the action of an administrative agency in determining eligibility for a Government gratuity. Under provisions of the regulation just quoted, the County Committee was given wide discretion in determining eligibility and was specifically authorized to consider the following:

(1) The application

(2) Knowledge of the Committeemen concerning the applicant's operations and finances

(3) Local conditions and probable duration of the emergency feeding period

(4) The general effect of the emergency conditions on the applicant's ability to meet his future operating expenses

(5) The probable effect of the emergency on the applicant's income.

No provision for judicial review is provided in the statute authorizing the 1954 Emergency Feed Program. Likewise, there is no provision in the regulations issued pursuant to the statute for an administrative review of the actions of the County Committee.

Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, provides for judicial review of agency action except so far as (1) the statutes preclude

judicial review, or (2) agency action is by law committed to agency discretion. Agency action is defined in Section 2(g) of the Administrative Procedure Act, 5 U.S.C.A. § 1001(g), as including " * * the whole or part of every agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

In his recent Treatise on Administrative Law, Professor Kenneth Culp Davis discusses the question of unreviewable action committed by law to agency discretion. In Volume 4, Sec. 28.16, he states:

"All of section 10 of the Administrative Procedure Act, dealing with judicial review, is modified by the two parts of the introductory clause, one part of which is: 'Except so far as * * * agency action is by law committed to agency discretion — * * *.' Whatever the scope of review prescribed by subsection (e) when read alone, the scope of review is narrowed by the introductory clause to the extent that the action is by law committed to agency discretion. For instance, although subsection (e) provides that the reviewing court shall set aside agency action found to be 'arbitrary [or] capricious,' the reviewing court may not set aside arbitrary or capricious action so far as agency action is by law committed to agency discretion. All other clauses of subsection (e) and of the rest of section 10 are similarly modified by the introductory clause.

"Reading one clause of subsection (e) with part of the introductory clause produces this result: 'Except so far as * * * agency action is by law committed to agency discretion * * * the reviewing court shall * * * set aside agency action * * * found to be * * * an abuse of discretion.' The literal language seems to say that the reviewing court shall set aside an abuse of discretion except so far as the agency may exercise discretion; the exception consumes the whole power of the reviewing court, so that whenever the agency has discretion the court is prohibited from setting aside an abuse of discretion. Nothing in the legislative history shows an intent to produce such a drastic change; probably no one during the Act's preparation put these words together in this juxtaposition. A practical interpretation which will carry out the probable intent and which will produce sound substantive results will emphasize the word 'committed.' So far as the action is by law 'committed' to agency discretion, it is not reviewable—even for arbitrariness or abuse of discretion; it is not 'committed' to agency discretion to the extent that it is reviewable. The two concepts 'committed to agency discretion' and 'unreviewable' have in this limited context the same meaning. Both depend upon what is committed 'by law' to agency discretion—both depend upon the statutes and the common law. To the extent that 'the law' cuts off review for abuse of discretion, the action is committed to agency discretion. The result is that the pre-Act law on this point continues. And the courts remain free, except to the extent that other statutes are controlling, to continue to determine on practical grounds in particular cases to what extent action should or should not be unreviewable even for abuse of discretion."

In a later paragraph of the same section, Davis discusses two cases applying the discretionary portion of Section 10 of the Administrative Procedure Act:

"A good example of a case in the present category is Sellas v. Kirk. [200 F.2d 217 (9th Cir. 1952), cert. den., 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366 (1953).] The plaintiff sued to enjoin a range manager of the Department of the Interior from reducing the plaintiff's permitted grazing on public lands. The

court first rejected the contention that the Act had been misinterpreted, and then held that the remaining problems were within the discretion of the grazing authorities: 'In this view, the situation would seem to be one where "agency action is by law committed to agency discretion," and hence the action complained of here would not be subject to judicial review.' Another court invoked the words 'by law committed to agency discretion' in holding that the action of the President under the Migratory Bird Treaty in prohibiting hunting of wild geese in a designated area was 'a proper exercise of the unlimited and unreviewable discretion vested and reposed by the Act.' [Lansden v. Hart, 180 F.2d 679, 683 (7th Cir.), cert. den. 340 U.S. 824, 71 S.Ct. 58, 95 L.Ed. 606 (1950).]"

See also the recent case of Luckenbach Steamship Company v. United States, D.C.D.Del.1959, 179 F.Supp. 605, in which a three-judge court held that it was without jurisdiction to review an Interstate Commerce Commission decision not to suspend operation of new tariffs. There the court said at pages 608–609 of 179 F.Supp.:

"Whatever the scope of review of subsection (e) [5 U.S.C.A., Sec. 1009] is when read alone, the scope of review is certainly narrowed by that portion of the introductory clause, 'Except so far as * * * (2) agency action is by law committed to agency discretion.' Thus, although subsection (e) provides that the reviewing court shall set aside agency action found to be 'arbitrary [or] capricious', it may not set aside arbirtrary or capricious action so far as agency action is by law committed to agency discretion. So far as the action is by law committed to agency discretion it is not reviewable—even for arbitrariness or abuse of discretion. Whether or not agency action is reviewable, for a limited purpose or otherwise, depends upon what is committed by the statutes and common law to agency discretion."

In Section 28.18 Davis states at pages 98–99 of Volume 4:

"Upholding unreviewability of questions of law, jurisdiction, and procedure is easiest in the batch of cases involving denial of government bounties or benefits, including pensions, discharge of government employees, government refusal to purchase goods, an award by an international commission, reimbursement to railroads of losses during government operation. Some kinds of presidential action clearly have to be unreviewable, including calling out militia and recognizing a foreign government."

Davis further states in Section 28.19 at page 103 of Volume 4:

"In trying to see in perspective the entire body of Supreme Court holdings on unreviewability, an examination of the impact of governmental programs is helpful. Just as one may readily subscribe to the idea that review may be denied of the award of government gratuities or bounties, perhaps a court can more easily deny review of a withholding of administrative assistance from those who are beneficiaries of government programs than it can deny review of administrative enforcement of obligations upon those who are subjected to the disadvantage of government programs. The distinction is quite different from that between gratuities and obligations, or that between privileges and rights; the distinction is partly between legal rights of one kind and legal rights of another kind."

In discussing the areas in which judicial review of administrative action is not required, 42 Am.Jur., Public Administrative Law, Sec. 188, provides in part:

"Notwithstanding the constitutional necessity of judicial review of administrative action in some in-

stances, there is a considerable area where legislative discretion may grant or withhold, or narrow the scope and extent of, judicial review, without infringing constitutional commands. Due process of law does not require judicial review of administrative action beyond the extent which is necessary to determine whether the requirements of due process have been met in the administrative proceeding. In several cases involving administrative determinations affecting rights and obligations as between the government and individuals, it has been said that where a full hearing is provided before the administrative tribunal, such determinations may be made final and conclusive, or if a review is allowed, the matter to be inquired into on appeal may, in the discretion of the legislative authority, be limited. Especially in cases involving a matter of gratuitous benefit or privilege, as distinguished from property rights, may an administrative determination be made final and conclusive without the right to judicial review."

The Government contends in its brief that the action of the County Committee was not final due to several aspects of the over-all Emergency Feed Program. It is first argued that the purchase orders for feed which were issued following certification by the County Committee provided that they are subject to "all rules and regulations issued by the U. S. Department of Agriculture governing the 1954 Emergency Feed Program." While it is true that this statement is made on the purchase order form, the court does not feel that it is a basis for denying finality to the County Committee's findings. The Government does not specify which regulations it believes are contra to this position, and none have been discovered by the court.

The plaintiff next contends that the function of the County Committee in this case was the same as that of a certifying officer in certifying that certain Government employees are entitled to pay or per diem for travel allowances, and that certainly the Government is not bound by that type of certification. After examination, however, it is obvious that the function is not the same. The certifying officer for pay and travel compensation vouchers, of necessity, functions within strict rules of procedure. He is invested with little or no discretion and only reviews activities that have already transpired. He is not required nor is he authorized to speculate on future conditions. County Committees on the other hand were given wide discretion, including the responsibility of peering into the future to determine the probable duration of the emergency and the effect of the emergency on the applicant's ability to meet his future expenses.

The plaintiff also alleges that the delegation of authority to the County Committee to pass upon the applications was improper. In support of this the Government quotes 5 U.S.C.A. § 516b, which provides:

"Whenever the Secretary of Agriculture deems that the delegation of the whole or any part of any regulatory function which the Secretary is, now or hereafter, required or authorized to perform will result in the more expeditious discharge of the duties of the Department of Agriculture, he is authorized to make such delegation to any officer or employee designated under this section. The Secretary is authorized to designate officers or employees of the Department to whom functions may be delegated under this section and to assign appropriate titles to such officers or employees. The position held by any officer or employee while he is designated under this section, and vested with a regulatory function or part thereof delegated under this section, shall be allocated to a grade, not lower than grade 7, in the professional and scientific service provided for by sections 661–663, 664-

669, 670–672, 673 and 674 of this title, or to a grade, not lower than grade 14, in the clerical, administrative, and fiscal service provided for by such sections. There shall not be in the Department at any one time more than two officers or employees designated under this section and vested with a regulatory function or part thereof delegated under this section. The Secretary may at any time revoke the whole or any part of a delegation or designation made by him under this section."

Regulatory function is defined in 5 U.S.C.A. § 516a(b):

"The term 'regulatory function' means the making, prescribing, issuing, or promulgating, of a regulatory order; and includes (1) determining whether such making, prescribing, issuing, or promulgating is authorized or required by law, and (2) any action which is required or authorized to be performed before, after, or in connection with, such determining, making, prescribing, issuing, or promulgating."

In this case, the basic statute, 12 U.S.C.A. § 1148a–2(d), provides that in carrying out the Emergency Feed Program, the Secretary may utilize the personnel, facilities, property and funds of any agency of the U. S. Department of Agriculture. Here the Secretary of Agriculture properly delegated to the Administrator of the Farmers Home Administration the function and responsibility of providing eligibility rules and certifications for applicants, and at the same time specifically directed him to assign to the County Committees the function of certifying applicants. The assignment of this function to the County Committees was not an assignment of a "regulatory function" within the meaning of 5 U.S.C.A. §§ 516a and 516b. Here the regulatory function was delegated to the Administrator of the Farmers Home Administration, and it is not contended that he failed to meet the qualifications required by Sec. 516b. The County Committee was charged with

the responsibility of investigating and determining whether the applicants meet the eligibility requirements prescribed by the Administrator of the Farmers Home Administration as set forth in 6 C.F.R., Pt. 388.

The Government places great stress on the case of Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 4, 92 L.Ed. 10. In that case the Federal Crop Insurance Corporation, a wholly owned Government corporation, created by the Federal Crop Insurance Act, 7 U.S.C.A. § 1501 et seq., to insure producers of wheat against crop losses due to unavoidable causes, including drouth, promulgated and published in the Federal Register regulations specifying the conditions on which it would insure wheat crops, including a provision making "spring wheat which has been reseeded on winter wheat acreage" ineligible for insurance. Without knowledge of this provision, a wheat grower applied to the corporation's local agent for insurance on his wheat crop, informing the local agent that most of it was being reseeded on winter wheat acreage; but this information was not included in the written application. The corporation accepted the application subject to the terms of its regulations. Most of the crop of the reseeded acreage was destroyed by drouth, and the Supreme Court held that the corporation was not liable for the loss on the reseeded acreage because the regulations, having been published in the Federal Register, the wheat crop insurance regulations are binding on all who seek to come within the Federal Crop Insurance Act regardless of actual knowledge of the regulations.

The fact situation in the instant case appears to be just contrary to that in the Merrill case. There a reference to the Federal Register by the applicant would have indicated that spring wheat which has been reseeded on winter wheat acreage was specifically excluded. Here a reference to the same publication would have indicated that the County Committee had been delegated the responsibility

of certifying applications and had been granted wide discretion in so doing.

In this case the plaintiff would place the court in a position of having to again decide the question of eligibility of the defendant partnership under the Emergency Feed Program some five years after the emergency. Apparently this court would be required to follow the same rules for determining eligibility as were employed by the County Committee. As stated before, this would include taking into consideration personal knowledge of the defendant's operations and finances, local conditions and probable duration of the Emergency Feed Program, the general effect of the emergency conditions upon the defendant's ability to meet its future operating expenses, and the probable effect of the emergency on the applicant's income. It should be obvious that the use of such a criteria calls for the exercise of judgment of men with special qualifications who are intimately acquainted with local agricultural conditions. The County Committees appointed under the Bankhead-Jones Farm Tenant Act, 7 U.S.C.A. § 1000 et seq., would be acquainted with local conditions and would be qualified to exercise such judgment. The conclusiveness and nonreviewability of the administrative findings of fact have often been rationalized on the ground that the administrative agency possesses the special knowledge and expertness that is required to pass upon such questions. 42 Am.Jur., Public Administrative Law, Sec. 211, at page 633.

Therefore, considering the fact that no fraud has been alleged; that the subject matter of the administrative hearing was a gratuity; that the County Committee was given wide discretionary authority in certifying applicants, and finally that the Committee was required to base its decision in part on strictly local conditions, including its personal knowledge of the applicant's qualifications and predicted future economic conditions in the county, the court is compelled to hold that the decision of the County Committee in this instance constitutes a nonreviewable administrative determination. The defendant partnership's motion for summary judgment is therefore granted.