**UNITED STATES of America, Appellant,**

v.

**WILEY'S COVE RANCH, Appellee.**

No. 16556.

United States Court of Appeals Eighth Circuit.

Oct. 23, 1961.

Rehearing Denied Dec. 26, 1961.

Before VOGEL and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

## VOGEL, Circuit Judge.

This is an appeal from the granting of summary judgment [1] against the United States, appellant, in its action to recover payments made by the Department of Agriculture for benefits received by appellee in the way of livestock feed under the 1954 Emergency Feed Program.

Pursuant to statutory authority, 12 U.S.C.A. § 1148a–2(d), the Secretary of Agriculture, by regulation, delegated the program's administration to the Farmers' Home Administration, including the power to establish rules and regulations for determining an applicant's eligibility to receive aid under the program. Such regulations as are pertinent to this case will be hereinafter set forth.

Appellee is a partnership engaged in farming and ranching in Arkansas. It applied for federal assistance under the provisions of the 1954 Emergency Feed Program. As a result of two applications, dated September 9 and December 13, 1954, it received, through purchase orders, 341,000 pounds of surplus grains at an alleged cost to the government of $3,410, the amount here sought to be recovered. These applications were passed upon, approved and, upon request, reexamined and again approved by a "County Committee" composed of three local persons appointed pursuant to the FHA regulations. On March 13, 1955, after the appellee had already received the benefits under the program, the FHA's State Director by letter informed the appellee that its application had been "rejected" by the "National Office" due to appellee's alleged ability to maintain its foundation herd without aid and, accordingly, demand for reimbursement was made. Appellee refused to refund the value of the benefits received. On June

Kathryn H. Baldwin, Atty., Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Charles W. Atkinson, U. S. Atty., Fort Smith, Ark., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., for appellant.

William S. Walker, Harrison, Ark., N. J. Henley, Marshall, Ark., for appellee.

1. Appellee filed a "Motion to Dismiss" which was treated by the court as a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. Reported at 181 F.Supp. 371.

5, 1959, over four years later, this suit to enforce repayment was commenced.

No fraud or claim of fraud is involved. The government concedes that its case is grounded solely on the alleged claim that:

"The financial condition and net worth of the partnership was not such that it required assistance under this program to maintain its foundation herd of livestock and to continue its livestock operations."

The appellee's applications for assistance under the program recited the number of livestock in its "basic herd", the amount of feed it had on hand and the acreage and expected yield of feed crops growing. They also contained the following certificate by appellee:

"I certify that the above information is correct, that my principal occupation is farming or ranching, and that I do not have a 60-day supply of feed on hand to maintain my basic herd of livestock listed in item 1.

"In order to provide a 60-day supply of feed for this livestock, I will need 0 tons of hay and 144,000 [2] pounds of *SURPLUS GRAINS DESIGNATED BY THE COMMODITY CREDIT CORPORATION* in addition to the feed I have on hand and that to be harvested during that period, and hereby make application for the purchase of that amount of feed under the Emergency Feed Program. Without the assistance applied for under the Emergency Feed Program I will be unable to maintain my basic foundation herd and to continue the livestock operation which I have been conducting for 17 years. *I WILL NOT SELL OR OTHERWISE DISPOSE OF ANY OF THE FEED HEREIN APPLIED FOR EXCEPT BY FEEDING IT TO MY BASIC HERD, IN Searcy COUNTY.*"

Concerning appellee's eligibility, two members of the County Committee [3] stated, *inter alia,* in an affidavit accompanying appellee's motion to dismiss:

"That during the year of 1954 the said William J. Seeger was manager of the said Wiley's Cove Ranch and authorized to act for and in behalf of the Mays family in the operation of the said Wiley's Cove Ranch; that the said William J. Seeger is now deceased. Affiants further state that the said William J. Seeger made proper application for feed under said Emergency Feed Program and that said County Committee made proper and due investigation of said application and determined that the said Wiley's Cove Ranch was fully eligible to receive feed under said program.

"Affiants personally knew that the said Wiley's Cove Ranch, like all other farmers in Searcy County during the year aforesaid was unable to raise any feed by reason of the extreme drouth; that said Ranch was devoted exclusively to raising pure-bred Hereford cattle for breeding purposes and had, at that time, several hundred head of said cattle which constituted a foundation herd for the purposes aforesaid; that it is and was the honest opinion of said Committee that the said Wiley's Cove Ranch received more than one-half of their net income for said year from raising and selling breeding stock from their herd of pure-bred cattle.

"That following the original certification of eligibility of said Wiley's Cove Ranch said County Committee was requested to re-examine the question of the eligibility of said Wiley's Cove Ranch to receive said emergency relief, and this re-examination was requested and done by reason of the fact that some question had arisen as to the eligibility of the Ranch to receive the aid aforesaid.

---

2. Appellee's second application was for 199,000 pounds.

3. The third member was no longer residing in Arkansas.

"That said Committee accordingly made a thorough investigation of the condition existing at the Wiley's Cove Ranch in reference to the eligibility aforesaid, and said Committee again found and determined that the said Wiley's Cove Ranch was fully and completely eligible to receive said help, and said County Committee again re-certified said fact to be true, and that the records of the Farmer's Home Administration will reflect the above facts to be true; that affiants are not related by blood or marriage to any member of the Mays family and that they have no personal interest, one way or another in the matter under discussion herein, and that they and each of them feel that they performed their duties as prescribed by law, * * *." 181 F.Supp. at pages 372–373.

The trial court, in granting summary judgment for appellee, held that the County Committee's action in determining appellee's eligibility constituted unreviewable agency action under § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, which provides for judicial review of agency action except so far as (1) the statutes preclude judicial review, or (2) agency action is by law committed to agency discretion. In so holding the court stated:

"Therefore, considering the fact that no fraud has been alleged; that the subject matter of the administrative hearing was a gratuity; that the County Committee was given wide discretionary authority in certifying applicants, and finally that the Committee was required to base its decision in part on strictly local conditions, including its personal knowledge of the applicant's qualifications and predicted future economic conditions in the county, the court is compelled to hold that the decision of the County Committee in this instance constitutes a nonreviewable administrative determination." 181 F.Supp. at page 380.

The government's primary contention on appeal is that independently of statute, the United States can sue to recover payments erroneously and illegally made by its agents and it terms the trial court's discussion of § 1009(2), supra, as "inapposite" in that here the action is not one for judicial review but "to recover public moneys erroneously and illegally paid". The distinction attempted is without substance. It can make little difference what the claim for relief is called. The prohibition of the statute may not be evaded by the simple expedient of denominating the action one for moneys erroneously and illegally paid. Nevertheless, the government here contends that its

"* * * right to sue to recover payments erroneously made is conclusively established. United States v. Wurts, 303 U.S. 414, 415, [58 S.Ct. 637, 82 L.Ed. 932]; Wisconsin Central Railroad Co. v. United States, 164 U.S. 190, 212, [17 S.Ct. 45, 41 L.Ed. 399]; United States v. Burchard, 125 U.S. 176, 180, [8 S.Ct. 832, 31 L.Ed. 662]. Cf. Land O'Lakes Creameries v. Commodity Credit Corporation, [8 Cir.] 265 F.2d 163. See also Kraft Foods Co. of Wisconsin v. Commodity Credit Corporation, [7 Cir.] 266 F.2d 254; Swift & Co. v. United States, [4 Cir.] 257 F.2d 787; Kingman Water Co. v. United States, [9 Cir.] 253 F.2d 588; United States v. Bentley, [2 Cir.] 107 F.2d 382",

and that no statute is necessary to maintain such suit.

In none of the cases relied on was it held that the payment made by the government was done pursuant to a vested *discretionary* power. The issue in the cited cases was whether payments made by the government by *legal mistake* were recoverable by the government. Such illegal payments are recoverable. Of the cited cases, Kraft Foods Co. of Wisconsin v. Commodity Credit Corporation, 7 Cir., 1959, 266 F.2d 254, certiorari denied 361 U.S. 832, 80 S.Ct. 83, 4 L.Ed.

2d 74, Land O'Lakes Creameries v. Commodity Credit Corporation, 8 Cir., 1959, 265 F.2d 163, and Swift & Co. v. United States, 4 Cir., 1958, 257 F.2d 787, certiorari denied 358 U.S. 837, 79 S.Ct. 60, 3 L.Ed.2d 73, rehearing denied 358 U.S. 901, 79 S.Ct. 220, 3 L.Ed.2d 152, involved actions by or against Commodity Credit Corporation for the recovery or retention of paid dairy support prices. Congress had authorized the Secretary of Agriculture to support the market on dairy products either by loans or by purchases of the products. The controlling issue in each case was whether the Commodity Credit Corporation "purchased" the dairy products described. It was held that the "paper transactions" engaged in did not constitute a sale by Land O'Lakes, Kraft Foods and Swift nor a purchase by Commodity Credit Corporation and that as the Agriculture Act of 1949, 7 U.S.C.A. § 1421 et seq. did not confer upon the Secretary discretion to support prices of dairy products in any manner excepting through "loans on or purchases of" dairy products, the amounts paid, which did not represent either loans or purchases, could not be retained. Significant to the question of the Secretary of Agriculture's authority or discretion, the court in Swift & Co., supra, cited as controlling by both Land O'Lakes and Kraft, noted:

> " * * * Congress, after giving careful consideration to the matter, denied the Secretary broad discretion as to the methods of price support, and confined him to those specifically enumerated in the Act." At pages 795–796 of 257 F.2d.

That is not at all the situation here and such cases lend no support to appellant's contentions. On a parity of reasoning the additional cases cited are also not persuasive.

In urging the applicability of United States v. Wurts, 1938, 303 U.S. 414, 415, 58 S.Ct. 637, 82 L.Ed. 932, the appellant quotes therefrom as follows:

> "The Government by appropriate action can recover funds which its agents have wrongfully, erroneously,

or illegally paid. 'No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute, * * *.' "

Appellant overlooks the observation of the Supreme Court at page 416 of the opinion in 303 U.S., at page 638 of 58 S.Ct.:

> " * * * The Government's right to recover funds, from a person who received them by mistake and without right, is not barred *unless Congress has 'clearly manifested its intention' to raise a statutory barrier.*" (Quoting from United States v. Nashville, C. & St. L. Ry. Co., 1886, 118 U.S. 120, 125, 6 S.Ct. 1006, 30 L.Ed. 81, wherein the issue was whether a state statute of limitations would run against the United States.) (Emphasis supplied.)

The teaching of Wurts is of no help to the government if § 1009 provides the requisite "statutory barrier". If we are here concerned with agency action by law committed to agency discretion, and if no fraud is alleged, then § 1009(2) is a bar to judicial review and this attempt at recovery must fail. A contrary conclusion would require us to completely ignore the clear language of the statute and allow the expedient denomination of an action to rule over the subsequent results sought to be accomplished.

We think, then, a preliminary question is addressed to the court; namely, does the record clearly establish that this is agency action by law committed to agency discretion? If the answer is in the affirmative, then, absent fraud, there can be no judicial review or inquiry.

In Luckenbach Steamship Co. v. United States, D.C.Del.1959, 179 F.Supp. 605, at pages 608, 609, modified on other grounds, 364 U.S. 280, 80 S.Ct. 1611, 4 L.Ed.2d 1719, the court stated:

> "Whatever the scope of review of subsection (e) is when read alone, the scope of review is certainly narrowed by that portion of the intro-

ductory clause, 'Except so far as * * * (2) agency action is by law committed to agency discretion.' Thus, although subsection (e) provides that the reviewing court shall set aside agency action found to be 'arbitrary [or] capricious', it may not set aside arbitrary or capricious action so far as agency action is by law committed to agency discretion. So far as the action is by law committed to agency discretion it is not reviewable—even for arbitrariness or abuse of discretion. Whether or not agency action is reviewable, for a limited purpose or otherwise, depends upon what is committed by the statutes and common law to agency discretion."

In the recent case of Schilling v. Rogers, 1960, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478, the Supreme Court was dealing with § 32(a) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 32(a), which authorizes the return, in certain circumstances, of property vested by the United States during World War II. Petitioner had filed a claim for the return of the proceeds of certain property. The Director, Office of Alien Property, rejected the claim "on the ground that petitioner was ineligible for relief under the § 32(a) (2) (D) proviso." The essence of the Director's decision was that:

"* * * his claim must be disallowed for the reason that he was not a member of a political, racial or religious group that was discriminated against. Anti-Nazis and non-Nazis do not constitute a political group." 363 U.S. at page 669, note 8, 80 S.Ct. at page 1292.

In holding that the District Court had no jurisdiction to review the determination of ineligibility for relief by the Director, the Supreme Court used language at pages 670 and 676 of 363 U.S., at pages 1292 of 80 S.Ct. which we find applicable here:

"Petitioner's principal reliance is upon § 10 of the Administrative Procedure Act which provides for judicial review of agency action '[e]xcept so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.' 60 Stat. 243, 5 U.S.C. § 1009, 5 U.S.C.A. § 1009. *We find that both such limitations are applicable here.*

\* \* \* \* \* \*

"We conclude that the Trading with the Enemy Act excludes a judicial remedy in this instance, and that because of this, *as well as because of the discretionary character of the administrative action involved*, the Administrative Procedure Act, by its own terms is unavailing to the petitioner." (Emphasis supplied.)

The instant case, too, deals with "the discretionary character of [agency] action" in determining "eligibility for relief".

For additional cases standing for the proposition that where agency action is by law committed to agency discretion there may be no judicial review, see Panama Canal Co. v. Grace Line, Inc., 1958, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788; Z. & F. Assets Realization Corp. v. Hull, 1941, 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288; Heiner v. Diamond Alkali Co., 1933, 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921; Sellas v. Kirk, 9 Cir., 1952, 200 F.2d 217, certiorari denied 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366; Lehr v. United States, 5 Cir., 1943, 139 F.2d 919, rehearing denied January 14, 1944. The Administrative Procedure Act did not change the common law on this question, but rather codified it. See 4 Davis, Administrative Law Treatise, § 28.08 (1958) at page 33, where the author states:

"* * * Agency action is left unreviewable to the extent that statutes preclude review or to the extent that agency action is by law committed to agency discretion. Since these two reasons are the only reasons why agency action could be unreviewable before the APA was enacted, the law of reviewability remains unchanged."

In determining whether the action of the County Committee in certifying the appellee as eligible for relief was a discretionary act, an examination of the enabling regulations is essential. The regulations pertinent to that inquiry are as follows: 6 C.F.R.

"§ 388.3. *Responsibility of FHA personnel—(a) County Committees. County Committees* of the Farmers Home Administration appointed pursuant to the Bankhead-Jones Farm Tenant Act, as amended, *are responsible for passing upon applications for assistance* under the Emergency Feed Program and *are authorized to execute the certification required with respect to an applicant's eligibility for such assistance.*

"*(b) Responsibility of other FHA personnel.* State Directors of the Farmers Home Administration are responsible for notifying County Supervisors of the designation of counties and for the *general supervision* of this Agency's functions in receiving and handling applications for assistance under the Emergency Feed Program in their respective states. County Supervisors are responsible for calling meetings of County Committees to pass upon applications and will act in an *advisory capacity* to such Committees. They are responsible also for the maintenance of such records and for the submission of such reports as may be required.

"§ 388.4 *Eligibility.* Subject to the following conditions, *any established farmer or stockman (partnership or corporation) whose principal occupation is farming or ranching and whose financial condition is such that he requires assistance* under this program in order *to maintain his foundation herd of livestock and continue his livestock operations, is eligible for assistance* under the Emergency Feed Program. The fact that the purchase of hay or other feed at regular prices may not be profitable to the applicant is not suffi-

cient to qualify him for assistance. The principal occupation of an applicant may be considered to be either the occupation from which he received at least one half of his net income for the calendar year next preceding the date of his application, or the occupation to which he devoted at least one half of his time during such year: *Provided,* That partnerships or corporations will be eligible only if at least one half of their net income for such year was derived from farming or ranching.

\*    \*    \*    \*    \*    \*

"§ 388.6 *Committee action.* (a) The County Supervisor will arrange for meetings of County Committees at regular intervals to pass upon applications for assistance if the volume received will justify meetings on that basis. Otherwise the County Supervisor will call meetings of County Committees at such times as may be necessary to process pending applications expeditiously.

"(b) *The County Committee will review* each application *and determine whether the applicant is eligible for assistance* and, if so, the extent of the assistance which may be provided. In making this determination, *the Committee will base its decision primarily upon the information supplied by the applicant, but will take into consideration other information, including knowledge of the Committeemen concerning the applicant's operations and finances, local conditions, and probable duration of the emergency feeding period, the general effect of the emergency conditions on the applicant's ability to meet his future operating expenses, and the probable effect of the emergency on the applicant's income.* Each Committee will be expected to apply the foregoing policies in a manner which will result in the impartial certification of applications, and will be expected to take reasonable precautions to see that hay or other feed is not furnished under

this program to farmers and stockmen who are otherwise able to maintain their foundation herds without such assistance. *Whenever there is doubt as to an applicant's eligibility, the Committee should request additional information from the applicant as may be necessary to the proper discharge of its duties.*

"(c) *Each application must be acted upon by at least two members of the Committee.* The action taken with respect to an application will be indicated on Form FHA–937. If the application is approved, the amount of hay or other specific types of feed for which the applicant is certified will be indicated. If the application is rejected, a brief statement of the reasons for the action will be indicated. The original and both copies of Form FHA–937 will be signed by at least two members of the Committee." (Emphasis supplied.)

We believe these regulations lend ample support for the trial court's finding that the "County Committee was given wide discretionary authority in certifying applicants". The language employed in § 388.3(a), supra, is indicative not of a lack of discretion in the County Committee but of broad authority granted to it as well as reliance to be placed upon the Committeemen's peculiar knowledge of local conditions and local applicants. Note the language of and the provisions of the regulations: The County Committee "are responsible" for passing upon applications for assistance; "are authorized" to make the certification of eligibility; the County Committee "will review each application and determine" eligibility for assistance. The County Committee is directed to make its determination of eligibility on, first, the information supplied by the applicant and, second, other information, including the Committeemen's own knowledge of the applicant's operations and finances, the existing local conditions, the probable duration of the emergency feeding period, the general effect of the emergency

conditions on the applicant's ability to meet his future operating expenses, and the probable effect of the emergency on the applicant's income. From this it should be noted that the County Committee here was functioning in an area indisputably within its special competence. It was observed in National Labor Relations Board v. Guy F. Atkinson Co., 9 Cir., 1952, 195 F.2d 141, 150, rehearing denied March 21, 1952, that:

"When an agency's determination, whether of fact, or of law, relates to physical or economic facts, with respect to which the agency's experience is calculated to give it special competence, there is reason for assuming that the determination should, so far as possible, be regarded as within the discretion of the agency."

We construe the language of the regulations as giving to the Committee unqualified discretion and authority for the determination of eligibility to receive assistance under the Emergency Feed Program.

In view of such authority, and considering the Committee's special competence, we hold with the District Court that the certification of appellee's eligibility to receive benefits under the Emergency Feed Program constituted "agency action by law committed to agency discretion".

The situation confronting the court here is analogous to that which existed in Butte, A. & P. Ry. Co. v. United States, 1933, 290 U.S. 127, 54 S.Ct. 108, 78 L.Ed. 222. In that case, Congress had provided compensation to railroads for deficits attributable to federal operation during the first World War. The Interstate Commerce Commission was directed to ascertain the amount of deficits or losses and to certify such amounts to the Secretary of the Treasury. Pursuant to a certificate of the Interstate Commerce Commission granted after hearing, the railroad received payment. Two years later the Commission issued an order pur-

porting to reopen the matter and set a hearing "for the purpose of affording the Railway opportunity to show cause why their certificate * * * should not be revoked and its claim dismissed." The Commission then reversed its original order and directed the railroad to repay the money. Upon refusal, an action was brought in the District Court for recovery. Judgment for the government there was affirmed by the Circuit Court of Appeals. Mr. Justice Brandeis, speaking for a unanimous court, reversed, stating that the payment hinged upon the Commission's original interpretation of the word "deficit" and

> "* * * That is a charge, *not of mistake but of error of judgment —a judgment necessarily exercised in the performance of the duties of office.* Neither the Commission in issuing the certificate, nor the Secretary of the Treasury, the Comptroller-General or the Treasurer, when co-operating to make the payment, labored under any mistake of fact; or overlooked any applicable rule of law; or was guilty of any irregularity in proceeding. Moreover, if the word 'deficit' was misconstrued, the error was not due to inadvertence." 290 U.S. at page 134, 54 S.Ct. at page 109. (Emphasis supplied.)

> \* \* \* \* \* \*

> "Under § 204, the Commission exercises functions broader than those customarily conferred upon auditing or disbursing officers. It sits as a special tribunal to hear and determine the claims presented. * * * It renders a judgment upon a full hearing. In deciding any one of the enumerated questions of construction, as in other rulings of law or findings of fact, the Commission may err. The victim of the error may be either the carrier or the government. * * * *Since authority to pass upon the meaning of the word 'deficit', and upon each of the other questions of construction, is essential to the performance of the*

> *duty imposed upon the Commission, and Congress did not provide a method of review, we hold that it intended to leave the government, as well as the carrier, remediless whether the error be one of fact or of law."* 290 U.S. at pages 142–3, 54 S.Ct. at page 112. (Emphasis supplied.)

In applying the teaching of that case to the situation with which we are here concerned, we find that the Committee here also "exercises functions broader than those customarily conferred upon auditing or disbursing officers." It, too, "sits as a special tribunal to hear and determine the claims presented." It, too, "renders a judgment upon a full hearing." It, too, may err and the victim may be either the petitioner for relief or the government. It, too, possesses the authority to pass upon those entitled to relief and in the performance of its duty it is essential that it exercise judgment and discretion. Here, too, there was failure to provide a method of review and we believe that as in Butte it was intended here that the government as well as the petitioner for relief be left remediless where the error be one of judgment.

■ The government also contends that the certification of appellee by the County Committee was subject to administrative review and correction. In support of its contention that the State Director had the power to review, reliance is placed, first, upon § 388.3(b) of the regulations. The point is made that the phrase "general supervision" encompasses the power to review and correct. Conceding no federal cases on the point, and only "a paucity of state cases", the government cites as authority for its proposition Great Northern Ry. Co. v. Snohomish County, 1908, 48 Wash. 478, 93 P. 924, and Vantongeren v. Heffernan, 1888, 5 Dak. 180, 38 N.W. 52. However, examination of those cases reveals that the enabling statutes there in question are significantly distinguishable from the regulations here under consideration. In Snohomish, the statute, as set forth by the court in its opinion at 93 P. at page 926, reads in part as follows:

" * * * 'the commissioners shall have power, and it shall be their duty: * * * Second. To exercise general supervision over assessors and county boards of equalization, *and the determination and assessment* of the taxable property in the several counties, cities and towns of the state, to the end that all taxable property in this state shall be placed upon the assessment rolls and equalized between persons, corporations and companies * * *.' " · (Emphasis supplied.)

It is apparent that the words "and the determination and assessment of the taxable property" signifies the legislative intent to grant to the commissioners in that case the *final* determination of the assessments.

Further in that case, the commissioners *had* fixed the value of inter-county railroads for the purpose of taxation, had given instructions to the assessors to so evaluate, and the acts of the Snohomish County officials in evaluating were in total disregard of such instructions.

In Heffernan, the apposite statutory authority as set forth by the court at 38 N.W. 52, 55, reads in part:

" * * * 'The commissioner of the general land-office shall perform, under the direction of the secretary of the interior, *all executive duties appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands, and also such as relate to private claims of land,* and the issuing of patents for all grants of land under the authority of the government.' " (Emphasis supplied.)

And, further on the same page, the court quotes:

" * * * 'all questions as to the right of pre-emption arising between different settlers shall be determined by the register and receiver of the district within which the land is situated; *and appeals from the decision of the district officers, in case of contest for the right of pre-emption,*

*shall be made to the commissioner of the general land-office, whose decision shall be final, unless appeal be taken to the secretary of the interior.'* " (Emphasis supplied.)

The court stated that the foregoing statute has been construed to mean that "in case of contest as to the rights of pre-emption, the decision of the local officers, as to matters of fact, is final, unless an appeal be taken; and has generally been so respected by the department and the courts." 38 N.W. at page 55.

Thus, although in the above cases the courts did discuss the term "general supervision" as meaning the power to review and correct, such interpretation would be reasonable there, in that the intent of the legislature in those cases indicated that the power to review and correct was to be reserved for higher authorities.

Such is not the situation in the case before us. When § 388.3 is read in its entirety and also in conjunction with § 388.6, the conclusion is tenable, if not forced, that the phrase "general supervision" refers only to non-discretionary or ministerial functions. There is no indication in the instant regulations that the action of the County Committee was not to be a final determination, as opposed to the statutes quoted from in the Snohomish and Heffernan cases.

Additionally, and we feel this is significant, the regulations make no express provision to the effect that the State Director shall have the power to review the applications for relief passed on by the County Committee. Had it been so intended, a clause of such import could have been put into the regulations, as was subsequently done in dealing with the granting of farm loans by the Farmers' Home Administration. See 6 C.F.R. § 332.2:

"*Loan approval authority.* The State Director is authorized to approve or disapprove farm ownership loans in accordance with Farmers Home Administration procedures." . (See 6 C.F.R. §§ 331.13, 331.14;

341.7; 354.4, 354.5 for further examples.)

Under § 332.3(a) of the regulations a County Committee there, as in the instant case, was responsible for certifying as to eligibility for loans. Nevertheless, the regulations there specifically delegate the responsibility for approval of the loans to an approval official.

■ Be that as it may, the short answer to the government's contention here is that there was no administrative review. None was attempted. The record merely discloses that after the relief had been granted by the County Committee and the payment made, the State Director of FHA by letter dated March 13, 1955, informed appellee that the "National Office" had rejected its application and determined that the ranch was ineligible for the benefits received because of its net worth and financial ability. By no stretch of the imagination could that letter be construed as an administrative review of the County Committee's judgment. See, Londoner v. City & County of Denver, 1908, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103; 1 Davis, Administrative Law Treatise, § 7.04 (1958).

Lastly, we are unable to agree with the government's contention that

" * * * the present case is well within the Merrill [Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10] decision and here as there the government is not bound by the action of its agents which was in excess of their authority."

That case was not concerned with the right of judicial review of agency action. The limited teaching therein is (1) that he who deals with the government is bound by duly promulgated regulations published in the Federal Register whether he has actual knowledge of them or not; and (2) the fact that he may have been misled by government agents' statements to the contrary is no excuse. That is not the situation here. The appellee was not misled by an agent of the government and, additionally, the appellee possessed full knowledge of the requirements and the conditions preliminarily necessary to receiving aid under the Emergency Feed Program.

The record here indicates, and it is conceded, that the sole and only dispute is over the financial condition of the partnership. Did that condition justify the granting of emergency relief or did it not? After two investigations and relying upon the appellee's statements and upon their own knowledge, as they were required to do, the members of the County Committee unanimously determined that the requested assistance was justified within the meaning of the law and the regulations. The government merely claims that it was not, in other words that there was an error of judgment; and more than four years after the assistance was given it brought suit for repayment. The essence of the government's position is that while the County Committee made its determination as to eligibility in complete good faith on its part as well as on the part of the appellee, yet such determination was a mistaken one. The County Committee must have been functioning in a discretionary field. In view of the broad authority given the County Committee in certifying applicants, the Committee's special competence in so certifying, and the fact that no fraud has been alleged, we hold with the District Court that the certificate of appellee's eligibility to receive benefits under the Emergency Feed Program constituted "agency action by law committed to agency discretion", hence was not judicially reviewable, and that the appellee's motion for summary judgment was properly granted.

Affirmed.

BLACKMUN, Circuit Judge (dissenting).

I must dissent. While this case is a close and troublesome one for me, and while the challenged dispensation is a

gratuity[1] made under emergency conditions, I think it strange that the United States, under the statutes and regulations here involved, is to be denied any opportunity whatsoever to test the validity of the disposal of government property by a local committee subject to local pressures in a situation so questionable that someone asked the committee to make a second investigation. I can concede perhaps that the Congress possesses the power so to foreclose the government but I am not convinced that that power has been exercised here.

One begins with the obvious fact that this is a lawsuit instituted by the United States for reimbursement. It is not a proceeding for review of a county committee's action. Usually, in this situation, certain firmly established principles govern:

1. The United States, by appropriate action and wholly apart from statute, may recover government funds which its agents have wrongfully, erroneously or illegally paid. This "right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has 'clearly manifested its intention' to raise a statutory barrier" (footnote omitted). United States v. Wurts, 303 U.S. 414, 415–6, 58 S.Ct. 637, 638, 82 L.Ed. 932; United States v. Sanborn, 135 U.S. 271, 281, 10 S.Ct. 812, 34 L.Ed. 112; Stone v. United States, 8 Cir., 286 F.2d 56, 58–9.

2. The government is not bound by the acts of its agent which are beyond the limits of his authority; persons dealing with that agent are charged with notice of his agency's limitations. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10; Farm Security Administration v. Herren, 8 Cir., 165 F.2d 554, 564, certiorari denied 333 U.S. 875, 68 S.Ct. 904, 92 L.Ed. 1151; Stone v. United States, supra, at page 58 of 286 F.2d.

3. "Men must turn square corners when they deal with the Government". Rock Island, A. & L. R. R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188; Merrill, supra, at page 385 of 332 U.S., at page 1 of 68 S.Ct.

Also, one may assume and conclude here:

1. That the delegation of authority by the Secretary to the FHA and the placement upon the county committees of responsibility for certification were proper.

2. That the regulations in question, 6 C.F.R. Part 388, 19 F.R. 5199 (revoked December 11, 1957, 22 F.R. 9877), were valid.

3. That the appearance of the regulations in the Federal Register gave legal notice of their content to all affected thereby. 44 U.S.C.A. § 307; Federal Crop Ins. Corp. v. Merrill, supra, at page 385 of 332 U.S., at page 1 of 68 S.Ct.; Kempe v. United States, 8 Cir., 151 F.2d 680, 684.

4. That these regulations have "the force and effect of law". Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 158, 64 L.Ed. 297; F. T. Dooley Lumber Co. v. United States, 8 Cir., 63 F.2d 384, 386, certiorari denied 290 U.S. 640, 54 S.Ct. 58, 78 L.Ed. 556; Jones v. United States, 8 Cir., 189 F.2d 601, 603.

5. That the regulations are binding upon the FHA as well as upon others. Chapman v. Sheridan-Wyoming Co., 338 U.S. 621, 629, 70 S.Ct. 392, 94 L.Ed. 393;

---

1. See Professor Jaffe's answer, with citations, to the sometimes heard suggestion that where government bounty is involved the administrative remedy presumptively excludes judicial review. Jaffe, The Right of Judicial Review II, 1958, 71 Harvard Law Rev., 769, 784–6. He says there, in part,

"It is sometimes suggested that when the United States creates rights against itself, particularly rights to the payment of money, the administrative remedy given to enforce the right presumptively excludes judicial review; the grant, it is said, is a mere 'privilege'. But there is little or no authority to support such a presumption. The authorities indeed are to the contrary and on principle no such presumption should be entertained. The notion of 'privilege' is in this context a perversion of thought and of language."

United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267, 74 S.Ct. 499, 98 L.Ed. 681; School District 2 Fractional etc. v. United States, 6 Cir., 229 F.2d 681, 686.

6. That agency action which substantially violates agency regulations "cannot stand". Service v. Dulles, 354 U.S. 363, 388–389, 77 S.Ct. 1152, 1 L.Ed.2d 1403; United States ex rel. Accardi v. Shaughnessy, supra.

The foregoing propositions, taken together, would seem to me to dispose of this case and to require a reversal of the summary judgment against the government.

The majority, the trial court and the defendant, however, would reach out for and bring into play the provisions of the Administrative Procedure Act of June 11, 1946, c. 324, 60 Stat. 237, as amended, 5 U.S.C.A. §§ 1001 to 1011, and would regard the county committee's decision as a non-reviewable agency action. Presumably, although it did not cite United States v. Wurts, supra, and the principle it establishes, the trial court must have

felt, as the majority obviously do, that this Act provides the "statutory barrier" which Wurts regards as the exception to its rule.

I have emphasized that this is not a proceeding directly to review an administrative order and thus is not one to which § 1009 of 5 U.S.C.A. literally applies. Tempting as it is, this case need not be decided on the procedural distinction between a petition for review and an action to recover benefits. Neither does it need to be decided on the ground that the FHA national office determination in March 1955 of the defendant's ineligibility precludes the defendant from now taking issue with this conclusion as a matter of defense. Those questions could be left for the future.[2] Assuming that this lawsuit, for present purposes, is the equivalent of a review proceeding, one is taken directly into the broadly controversial area[3] of the Administrative Procedure Act[4] and is compelled to measure its impact upon the facts of this case.

Section 1001(g) widely defines "agency action"[5] and 1009(a), (c) and (e) liberally provide[6] for review. This review,

2. It has been said, with respect to veteran's benefit cases, that neither the Supreme Court nor this court has passed upon the question whether an agency action which is not subject to direct judicial review may properly be asserted as a matter of defense in an action brought by the government for affirmative relief. United States v. Daubendiek, D.C.N.D. Iowa, 25 F.R.D. 50, 55. The reported cases are in conflict. Among those which derive no comfort in any distinction between direct and indirect attack upon the agency action and therefore do not rely on it are United States v. Crockett, D.C. D.Maine, 158 F.Supp. 460, 462; United States v. Perry, D.C.E.D.N.C., 141 F. Supp. 443; and In re Gregg, 198 Misc. 778, 100 N.Y.S.2d 752. See United States v. Rohde, D.C.D.S.D., 189 F.Supp. 842, 845. Among those which do are United States v. Lawrence, D.C.D.Mont., 154 F.Supp. 454, 457; United States v. Owens, D.C.E.D.Ark., 147 F.Supp. 309, 313; and Gongora v. United States, D.C., 183 F.Supp. 872, 873. The majority opinion necessarily casts doubt upon those cases, among the ones just cited, which permit government recovery in the face of

initial adverse administrative determination.

3. See the Preface to Davis, Administrative Law Treatise, 1958, where he says, among other things:
"* * * Chaotic law inevitably pushes the treatise writer, if he perseveres, from attempted summary to attempted critique. Reliance on authority gives way to attempted solution of problems. When search for established principle turns out to be futile, the search must be for sound principle." (Par. III)

4. Admittedly, Professor Jaffe has said that the Act has "had a negligible effect on the basic right to judicial review". 71 Harvard L. Rev. 769, supra, at p. 790. Professor Davis in his Treatise has indicated that, with the Act, "the law of reviewability remains unchanged". Davis, volume 4, § 28.08, p. 33.

5. "(g) * * * 'Agency action' includes the whole or part of every agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act".

6. "(a) Any person suffering legal wrong because of any agency action, or adverse·

however, is subject to the initial restrictive phrase of § 1009:

"Except so far as (1) statutes preclude judicial review or (2) agency action is by law *committed to agency discretion*".

The first exception of § 1009 obviously does not apply here and we are concerned only with the second exception which has to do with commitment to agency discretion. Was there such commitment here?

Whether one accepts or refuses the proposal that judicial review of administrative action is the rule, and nonreviewability is the exception which must be demonstrated,[7] is, so far as I am concerned, a consideration not too important for this case.

The very regulations before us, § 388.4 and its subdivisions, clearly set forth conditions for an applicant's eligibility to receive emergency assistance and for his use of the supplies furnished: (1) that the applicant be an established farmer or stockman; (2) that his principal occupation be farming or ranching (as therein defined); (3) that his financial condition be such that he requires assistance under the program; (4) that that assistance be needed in order to maintain his foundation herd and continue his livestock op-

erations; (5) that the fact that prevailing feed prices are not profitable is not sufficient to qualify him; (6) that the assistance be limited to maintenance of foundation herds of cattle, sheep and goats; (7) that the herd consist only of the breeding stock; (8) that the assistance be limited to a 60-day supply after taking into consideration feed on hand and to be produced or otherwise acquired; (9) that dairymen who normally purchase all their feed do not qualify; and (10) that any feed obtained under the Program be used only for feeding the basic herd in the county designated. These conditions, standing alone, suggest comparatively little by way of discretion for the county committee and could not be regarded as encompassing something definitely "committed to agency discretion" within the meaning of § 1009 of the Act.

Section 388.4, however, does not stand alone. Section 388.6(b) commands that the county committee base its decision *primarily* upon the information supplied by the applicant. But it also permits, or perhaps even charges, the committee to "take into consideration other information, including" (1) "knowledge of the Committeemen concerning the applicant's operations and finances"; (2)

ly affected or aggrieved by such action within the meaning of any, relevant statute, shall be entitled to judicial review thereof.

\* \* \* \* \*

"(c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review.

\* \* \* \* \*

"(e) So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power,

privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 1006 and 1007 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error."

7. See Jaffe, The Right to Judicial Review I, 1958, 71 Harvard L. Rev. 401, 432; Mr. Justice Brennan and others dissenting in Schilling v. Rogers, 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed. 1478; and Davis, volume 4, § 28.21.

knowledge of the committeemen concerning "local conditions"; (3) knowledge of the committeemen concerning "probable duration of the emergency feeding period"; (4) "the general effect of the emergency conditions on the applicant's ability to meet his future operating expenses"; and (5) "the probable effect of the emergency on the applicant's income". It then concludes with the prescription that the committee "will be expected to apply" these "policies in a manner which will result in the impartial certification of applications, and will be expected to take reasonable precautions to see that * * feed is not furnished under this program to" those "who are otherwise able to maintain their foundation herds without such assistance".

Section 388.6(b) thus presents the county committee with the *opportunity* to use material which may be deemed to be peculiarly within its knowledge. This does not mean, however, that the 10 conditions listed above are completely and necessarily infected and overlaid by a discretionary area. Thus, here, whether the committee used material within its personal knowledge, or should have used such material, is our question.[8] If it has not, or if it has but the situation is one where its peculiar "knowledge" is obviously unjustified (one can suppose, for example, a comparatively small farming operation by a person of vast outside resources), judicial review then is definitely in order.

In the state of this record it is not possible for me to ascertain the basis of the committee's determination of the defendant's financial condition and consequent eligibility or to determine whether the committee relied in any degree whatsoever "on their own knowledge", as the majority suggests. The defendant by its answer as amended, by its motion, and by the supporting affidavit merely asserts that the committee had investigated and reinvestigated and had determined eligibility. The defendant in its applications certified that without the requested assistance it would be unable to maintain its basic foundation herd and to continue its livestock operations; the same forms contain the committee's certification of eligibility in conclusional terms. The government by its answer to the interrogatory merely asserts that the condition as to financial inability was not met.

The government relies heavily on Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 2, 92 L.Ed. 10. The Insurance Corporation was an agency within the Department of Agriculture. By appropriate federal legislation it was empowered to insure wheat producers "against loss in yields due to unavoidable causes, including drought" and upon such terms and conditions not inconsistent with the authorizing legislation "as it may determine". The Corporation issued its regulations and these were duly published in the Federal Register, 10 F.R. 1585, et seq. The regulations, § 414.37 (v), excluded from the definition of the 1945 insured wheat crop "spring wheat which has been reseeded on winter wheat acreage". The plaintiffs applied for insurance and informed the county committee, acting as agent for the Corporation, that a major portion of their planting was spring wheat reseeded on winter wheat acreage. The committee advised the plaintiffs that the entire crop was insurable. The application, which did not disclose the reseeding, was accepted. That year drought destroyed most of the crop. Liability was then denied by the Corporation. In the subsequent suit before a jury evidence was presented of the plaintiffs' lack of actual knowledge of the bar of the regulations. The state courts upheld a jury verdict for the plaintiffs on the theory that the agent's knowledge and representations bound the Corporation. 67 Idaho 196, 174 P.2d

---

**8.** The presence of some discretion does not defeat reviewability. This is implied by § 1009(e)'s reference to setting aside agency action for "an abuse of discretion". And it has been said that "almost every agency action 'involves' an element of discretion or judgment". Homovich v. Chapman, 89 U.S.App.D.C. 150, 191 F.2d 761, 764.

834. The Supreme Court reversed, pointing out the provision of the regulations, their incorporation in the application by reference, and their conclusiveness upon the plaintiffs.

I cannot agree with the majority's easy dismissal of Merrill, or with the trial court's conclusion that the fact situation here is "just contrary" to the situation there. In Merrill, as here, no fraud was asserted. There, as here, the statute was silent and the exclusionary provision was in the regulations. And there, as here, the regulations had been published in the Federal Register with consequent legal notice of their contents. In some respects the fact situation in Merrill is weighted more strongly against the government than in this case: Here there was no misinformation given by the county committee to the applicant; here there are no human "phases of hardship" comparable to the misplaced reliance there upon insurance; and here the defendant possessed actual rather than presumed knowledge of the requirement that it be independently unable to maintain its herd, for that condition was spelled out in the very applications and certifications which the defendant signed.

Merrill turns largely on the nature of the self-evident content of the regulations. In that case, as the trial court here pointed out, at page 379 of 181 F.Supp., a reference to the Federal Register "would have indicated that spring wheat which has been reseeded on winter wheat average was specifically excluded". But is it correct to say, as the trial court also stated, that here such a reference would have shown only "that the County Committee had been delegated the responsibility of certifying applications and had been granted wide discretion in so doing"? An examination of the Federal Register would have disclosed more than this. It would have shown, specifically, the emphasis in each separate section of Part 388 upon *eligibility* of an applicant for assistance. It would have shown as requisites for eligibility the 10 conditions outlined above, and it would have shown, thereafter, the delimited area of possible discretion.

I do not derive from Butte, A. & P. Ry. v. U. S., 1933, 290 U.S. 127, 54 S.Ct. 108, 78 L.Ed. 222, the complete comfort which the majority finds. Evidently defense counsel do not either, for they did not cite it. It does provide an analogy, but it is an analogy of thirty years ago; it is one involving an accounting question where administrative "expertise" was more assured in the established Interstate Commerce Commission, which the Court said, at page 142 of 290 U.S., at page 112 of 54 S.Ct., was sitting "as a special tribunal", than is the case with the county committee here possessed with only questionable "special competence" on matters of financial responsibility and need for assistance; and it is one decided long before the development of extensive administrative procedures and today's wide concern with the problem of judicial review thereof. Furthermore it, at page 143 of 290 U.S., at page 108 of 54 S.Ct., and Switchmen's Union of North America v. National Mediation Board, 1943, 320 U.S. 297, 305, 64 S.Ct. 95, 88 L.Ed. 61, stress the lack of statutory provision for review; while we have a similar absence here, we also now have, as has been noted, the Administrative Procedure Act's emphasis on review unless "committed to agency discretion".

If there is a line between Merrill on the one hand and Butte on the other, I must, where there is any doubt, resolve it in favor of the government. And if there are opposing policy considerations between the principle of United States v. Wurts, supra, and that of the Administrative Procedure Act and its § 1009, I must, where there is any doubt, resolve that, too, in favor of the government.

The United States, it seems to me, is entitled to have at least a chance to prove its case with respect to which it promptly took a position in 1955, to prove that merit underlay the requested "reexamination" of this defendant, to show that the committee did not employ material within its personal knowledge or exercise

"reasonable precautions", and to show that the situation here was one which fell outside the discretionary area. Whether it can do so is, of course, another matter.