**STATE OF IOWA, ex rel. Thomas J. MILLER, Attorney General of Iowa, Plaintiff,**

v.

**John R. BLOCK, Secretary of United States Department of Agriculture; the United States Department of Agriculture, an agency of the United States Government, Defendants.**

Civ. No. 84–356–A.

United States District Court,
S.D. Iowa, C.D.

Aug. 22, 1984.

---

Thomas J. Miller, Atty. Gen., Timothy D. Benton, Asst. Atty. Gen., for plaintiffs.

G.F. Hoffman III, Leon, for plaintiff-intervenors.

Richard K. Willard, Acting Asst. Atty. Gen., Dennis G. Linder, Atty., Arthur Goldberg, Atty., Dept. of Justice, Washington, D.C. and Richard C. Turner, U.S. Atty., Des Moines, Iowa, for defendants.

## RULING AND ORDER ON MOTION TO DISMISS

STUART, District Judge.

Plaintiffs' motion for preliminary injunction and defendants' motion to dismiss came on for hearing August 10, 1984. Appearances are noted in the Clerk's minutes for that date. Although defendants requested a ruling on their motion to dismiss before hearing on the motion for preliminary injunction, the Court determined that it was in the interest of justice and judicial efficiency to submit the motions together. Evidence on the motion for preliminary injunction was received on August 10, 1984, and statements of counsel on both motions were heard on August 13, 1984.

After having heard the statements of counsel and the testimony, reading the affidavits, and reviewing the written briefs and the remainder of the file, the Court concludes that the defendants' motion to dismiss must be granted.

This action was initially brought by the State of Iowa under the Federal Administrative Procedure Act's judicial review provisions, 5 U.S.C. sections 701–706 [herein-

after "APA"], in an effort to compel John R. Block, Secretary of the United States Department of Agriculture, to implement five federal agricultural disaster relief programs[1] in Iowa. Several Iowa farmers intervened as plaintiffs in the action after defendants filed their motion to dismiss. Plaintiffs contend that defendants' failure to implement the five programs wrongfully contravened the intent of Congress stated in the statutory provisions providing for the programs. According to plaintiffs, Mr. Block's failure to implement the five programs to relieve the drought-stricken conditions of farmers in several Iowa counties, was arbitrary, capricious, an abuse of discretion, and a violation of the separation of powers doctrine. Plaintiffs ask the Court to hold Mr. Block's failure to act unlawful under 5 U.S.C. section 706, and to issue a preliminary and permanent injunction compelling defendants to exercise their discretion to implement the five programs.

Defendants moved to dismiss the State of Iowa for lack of standing, and to dismiss the entire action for lack of subject matter jurisdiction. The Court will consider each of defendants' contentions separately.

### I. *State of Iowa's Standing.*

The State of Iowa has brought this action as *parens patriae* on behalf of its citizens and on its own behalf because the economic well-being of the State will be injured if substantial numbers of Iowa farmers are forced out of business due to defendants' failure to implement the five agricultural disaster relief programs.

### A. *Parens Patriae Standing.*

■ In *Massachusetts v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), the State of Massachusetts sought to represent its citizens against the United States Secretary of the Treasury in a challenge to the constitutionality of a certain federal statute. The Court held:

---

**1.** The five programs are (1) the Emergency Feed Program, 7 U.S.C. Section 2267; (2) the Livestock Feed Program, 7 U.S.C. Section 1427; (3) the Disaster Reserve Program, 7 U.S.C. Section

1427a; (4) a prevented-planting and reduced-yield program, 7 U.S.C. Section 1444d; and (5) a program for the orderly disposal of stockpiled grain, 7 U.S.C. Section 1851.

It cannot be conceded that a State, as *parens patriae*, may institute judicial proceedings to protect citizens of the United States from the operation of the statutes thereof. While the State, under some circumstances, may sue in that capacity for the protection of its citizens (*Missouri v. Illinois*, 180 U.S. 208, 241 [21 S.Ct. 331, 343, 45 L.Ed. 497]), it is no part of its duty or power to enforce their rights in respect to their relations with the Federal Government. In that field it is the United States, and not the State which represents them as *parens patriae*....

*Massachusetts v. Mellon*, 262 U.S. at 485–86, 43 S.Ct. at 600. Several courts read *Mellon* as prohibiting states from suing as *parens patriae* the federal government. E.g., *Pennsylvania v. Porter*, 659 F.2d 306, 317 (3d Cir.1981) (interpreting prior caselaw), *cert. denied*, 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383, (1982); *Graham v. Schweiker*, 545 F.Supp. 625, 627 (S.D.Fla.1982). In *Pennsylvania v. Kleppe*, 533 F.2d 668 (D.C.Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 584 (1976), the Court of Appeals for the District of Columbia Circuit addressed the issue before this Court. The *Kleppe* Court held that, absent a showing that a state's action as *parens patriae* would not substantially intrude into the discretionary administrative workings of the federal agency, the federal government is the only proper party to act as *parens patriae* for citizens seeking benefits flowing directly from the federal government. *Id.* at 679–80. The State does not contend that this action would not constitute a substantial intrusion into the discretionary administration of the United States Department of Agriculture. Thus, under the pre-July 1982 precedent, the State of Iowa would not have standing to sue as *parens patriae*.

In July 1982, the United States Supreme Court handed down *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), holding that Puerto Rico could represent its citizens as *parens patriae* in an action against private persons for violating a federal statute. The Court carefully pointed out, however, that the action could not have been maintained against the federal government. Four members of the Court stated a proposition that the concurring justices did not dispute: "A State does not have standing as *parens patriae* to bring an action against the Federal Government." *Id.* at 610 n. 16, 102 S.Ct. at 3270 n. 16.

Thus, it appears that the Supreme Court has recognized the continuing viability of the holding in *Mellon*. Applying that rule, the Court concludes that the State does not have standing to bring this action as *parens patriae*.

### B. Proprietary Interest Standing.

The State of Iowa alleges that defendants' failure to implement the agricultural disaster relief programs will harm the State by causing increased unemployment, decreased tax revenues, injury to the State's interest in insuring equal treatment in the federal system, injury caused by increased fiscal outlays resulting from social dislocation, and general injury to the economic well-being of Iowa citizens. The State admits that neither it nor any of its agencies would receive any relief under any of the five programs, and that it takes no part in administering any of the programs.

### 1. Are the State's alleged interests "proprietary?"

In *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 591, 102 S.Ct. 3503, 73 L.Ed.2d 994 (1982), the United States Supreme Court distinguished between proprietary interests—which can serve as the basis of the State's action—and quasi-sovereign interests, which can form the basis only for an action as *parens patriae*. The Court stated that a proprietary interest is one a state acquires by owning property or participating in a business-type venture, *id.* 458 U.S. at 601–02, 102 S.Ct. at 3265–66, while a quasi-sovereign interest is typified by a state's concern for the health and well-being of the state's residents in gener-

al or a desire not to be discriminatorily denied its rightful status within the federal system. *Id.* at 607–08, 102 S.Ct. at 3268–69. It is apparent that the State's alleged injuries of increased unemployment, disparate treatment, and general injury to the economic well-being of the state are quasi-sovereign in character. Thus, such injuries, although appropriate for forming the basis of standing as *parens patriae,* are not sufficient to form the basis of standing on proprietary interests.[2] *Pennsylvania v. Kleppe,* 533 F.2d 668, 671 (D.C.Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 584 (1976).

2. Has the State shown that it has suffered injury in fact and that the State's injuries are not merely generalized grievances?

In order to state a cognizable Article III case and controversy, the State must show that its own alleged injuries are actual or imminent, that the injuries can be fairly traced to the challenged inaction of the Secretary, and that the injury can be redressed by specific judicial relief. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472–74, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982); *Cason v. Pierce,* 719 F.2d 931, 933 (8th Cir.1983). In addition, in order to show that it is a proper party-plaintiff, the State must show that its injuries are to itself, and not generalized grievances shared in substantially equal measure by the citizens of Iowa. *Warth v. Seldin,* 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Several of the State's alleged injuries, while sufficient to support standing as *parens patriae* against a private defendant, fail to constitute distinct, palpable injuries to the State as a state. The State's alleged injuries of increased unemployment, increased social outlays due to social dislocation, and general injury to economic well-being are so speculative and causally removed from the alleged wrong, that they

do not constitute injury in fact. The alleged injuries to the State in the forms of increased unemployment, decreased tax revenues, and disparate treatment are generalized grievances, shared by each citizen of Iowa. *See Pennsylvania v. Kleppe,* 533 F.2d 668, 672 (D.C.Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 584 (1976). In summary, the Court concludes that the State has failed to allege an injury to itself that would constitute a sound basis for standing in federal court.

3. Is the State arguably within the zone of interests protected by the agricultural disaster relief programs?

In order to maintain standing to sue, the State must also show that its alleged interests in this suit are arguably within the zone of interests protected by any one of the five agricultural disaster relief programs. *Association of Data Processing Servs. v. Camp,* 397 U.S. 150, 154–56, 90 S.Ct. 827, 830–31, 25 L.Ed.2d 184 (1970); *Taylor v. Jones,* 653 F.2d 1193, 1207–08 (8th Cir.1981). The language of the statutes establishing the programs indicate that Congress intended to relieve farmers stricken by agricultural disasters. The State of Iowa is not an intended beneficiary of any of the programs and has no part in administering them. Under these circumstances, the Court concludes that the State also lacks standing because it is not even arguably within the zone of interests created by the programs. *Pennsylvania v. Kleppe,* 533 F.2d 668, 671–72 (D.C.Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 584 (1976); *see Granville House, Inc. v. Department of Health & Human Servs.,* 715 F.2d 1292, 1299 (8th Cir.1983); *Kozera v. Spirito,* 723 F.2d 1003, 1007 (1st Cir.1983); Comment, State Standing to Challenge Federal Administrative Action: A Re-examination of the *Parens Patriae* Doctrine, 125 U.Pa.L.Rev. 1069, 1095–98 (1977).

In summary, the Court concludes for the reasons stated above that the State lacks

---

**2.** This holding is closely tied to the Court's determination of the State's failure to show suffi-

cient injury in fact on these grounds, *infra.*

standing to bring this action on the basis of its asserted proprietary interests.

## II. *Subject Matter Jurisdiction.*

■ The parties agree that the implementation of the agricultural disaster relief programs is committed to the discretion of the Secretary of the United States Department of Agriculture. Plaintiffs contend that the Secretary abused that discretion by failing to implement the programs in several Iowa counties after the drought of 1983 ravaged southeast Iowa, and that his exercise of discretion is reviewable under the APA, 5 U.S.C. section 706(2)(A).[3] Defendant contends that the discretion to implement the programs is vested solely in the Secretary, and that such discretion is not subject to judicial review, pursuant to the APA, 5 U.S.C. Section 701(a)(2).[4]

The exception to judicial review established by Section 706(2)(A) "is a very narrow exception.... The administrative history of the Administrative Procedure Act indicates that is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). There is a presumption that agency action is reviewable, which is rebutted only when the review court has no law to apply. *Tuepker v. Farmers Home Administration,* 708 F.2d 1329, 1331–32 (8th Cir.1983).

In determining whether there is law to apply, federal courts have analyzed pragmatic considerations as to whether an agency determination is the proper subject of judicial review. These pragmatic considerations include whether the challenged agency action is of a type Congress intended to be left to a reasonable exercise of agency expertise, and whether the problem that formed the basis of the challenged agency action is one suitable for judicial determination. *Id.* at 1332; *Chaney v. Heckler,* 718 F.2d 1174, 1195 (D.C.Cir. 1983); *see Cooperative Power Association v. Federal Energy Regulatory · Commission,* 733 F.2d 577, 581 (8th Cir.1984) (per curiam); *United States v. 1426.5 Acres of Land,* 732 F.2d 1375, 1379–81 (8th Cir. 1984); *United States v. Wiley's Cove Ranch,* 295 F.2d 436, 440–43 (8th Cir.1961).

The language used by Congress in the statutes establishing the five agricultural disaster relief programs indicates that Congress intended to make a broad delegation of power to the Secretary. None of the language mandates that the Secretary implement the programs under certain conditions. Instead, Congress used permissive language, allowing the Secretary to set the terms of implementation he determined to be in the national interest. This broad delegation of authority by Congress leaves the Court with little, if any, standard for reviewing the Secretary's failure to implement the programs.[5]

Pragmatic considerations also incline the Court to find that the Secretary's failure to

---

**3.** Section 706(2)(a) provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

. . . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
. . . .

**4.** Section 701(a)(2) provides:
(a) This chapter applies, according to the provisions thereof, except to the extent that—

. . . . .

(2) agency action is committed to agency discretion by law.

Section 706 of the APA provides the standards for reviewing agency action after it has been determined that judicial review exists. Reviewability is determined by section 701. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 413, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971).

**5.** The Court recognizes that the Secretary's regulation, 7 C.F.R. Section 1475.53, presents the judicial review issue in a distinct procedural context. However, the Court accepts the defendants' statement that the Livestock Feed Program, 7 U.S.C. Section 2267, could be re-implemented by the Secretary at any time by merely rescinding Section 1475.53.

implement the five programs in southeast Iowa is not a proper subject for judicial review. Throughout the years Congress has authorized a broad range of discretionary assistance programs to deal with agricultural disasters. Recognizing that the Secretary possesses expertise in agricultural affairs and the means of evaluating the everchanging national agricultural conditions, Congress often vested discretion in the Secretary to determine whether to implement such programs. In deciding which programs to implement and the areas or individuals that are entitled to assistance, the Secretary must consider the level of relief required, the national and international ramifications of implementation, the level of relief afforded by programs already implemented, and various other economic and managerial issues. For the Court to fairly and fully review the discretionary decision of the Secretary, all of the factors that entered into the decision would have to be brought before the Court, if that would be possible. In addition, the Court does not believe that it could properly review the Secretary's determinations—which were certainly based on data gathered from national and international sources—and then limits its decision whether the Secretary acted arbitrarily to the situation presented in several southeast Iowa counties.

Were it to review the Secretary's decision, the Court would have no difficulty in finding that the emergency assistance programs actually implemented by the Secretary did not provide sufficient relief to the livestock farmers in southeast Iowa who find themselves in precarious financial situations due, at least in part, to the adverse weather conditions of the past three years. But it is not for the Court to substitute its judgment for that of the Secretary under the circumstances presented here.

As indicated above, the Secretary must look far beyond the particular local situation in exercising his discretion. The national and international concerns, the empirical data, the ramifications of particular actions including the effect of the national budget and other factors that may be involved in a particular decision are so far-reaching and complex that this discretionary determination is not a proper subject of judicial review. Accordingly, the Court shall grant the motion to dismiss for lack of subject matter jurisdiction.

IT IS THEREFORE ORDERED that defendant's motion to dismiss plaintiff State of Iowa for lack of standing shall be and hereby is granted.

IT IS FURTHER ORDERED that defendants' motion to dismiss this action for lack of subject matter jurisdiction shall be and hereby is granted.